# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1258

_____

United States of America,                *
                                          *

        Appellee,                 *

                                          *  Appeal from the United States

      v.                       *  District Court for the

                                          *  Western District of Missouri.

James W. Bell,                    *

                                          *

        Appellant.              *

_____

Submitted: September 14, 2004
Filed: June 21, 2005

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

James W. Bell was convicted of being a felon in possession of a firearm. He appeals the sentence of seventy-seven months imposed by the District Court.[1] Bell argues the District Court erred 1) by denying him a sentencing reduction for acceptance of responsibility and 2) by enhancing his sentence based on his use of a firearm in connection with another felony. Bell also claims his sentence is

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

unconstitutional in light of the Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).[2] As discussed herein, we affirm the District Court.

# I.

On April 25, 2003, Bell appeared at the Missouri Hotel homeless shelter in Springfield, Missouri, and said he had an urgent matter for coordinator David Bodine. The front-desk clerk told Bell that Bodine was unavailable and directed him to the office of case manager Sandy Granger. Upon entering Granger's office, Bell asked her in a nervous manner if he could close the door, then said he wanted her to know how urgent the matter was.

Next, Bell sat down, placed a .22 caliber pistol on Granger's desk with the barrel pointing toward her chest, and asked her, "Do I have your attention now?" Trial Tr. at 8. Granger gasped and asked Bell if he would like her to call Bodine, to which Bell responded affirmatively, telling her to "let [Bodine] know how urgent this matter is." <u>Id.</u> at 9. Unsure of how Bell would react, Granger did as she was instructed without mentioning the gun to Bodine. In the few moments before Bodine arrived, Bell placed the gun back in his coat and told Granger, "I want to show Mr. Bodine how urgent a matter this is just like I did you." <u>Id.</u> Granger told Bell, "I wouldn't do that if I were you." <u>Id.</u> at 9–10.

Bodine then entered Granger's office and closed the door, noticing that Granger was acting nervous and looking pale. As Bodine sat down, Bell produced the gun again, aimed it directly at Bodine, this time with his finger on the trigger, and asked

---

[2]Bell's appellate brief was filed prior to the Supreme Court's issuance of its decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005).

once more, "Now do I have your attention?" Id. at 17. Bodine, a former police officer, grabbed the gun from Bell's hand. Bell then reached into his coat and Bodine, thinking Bell might have another weapon, grabbed Bell's arm, taking from him a box of bullets. Bodine subdued Bell after a brief scuffle and told Granger to dial 911. Granger did so, and the police arrived to arrest Bell. When the police inspected the gun, they found it was not loaded.

When questioned by the police, Bell first denied ever having been arrested as an adult, but after the police checked his record, Bell admitted a previous robbery conviction. Bell told the police he did not count that conviction, for which he had been sentenced to ten years in prison, because it was very old. As for his actions, Bell stated he had taken the gun from a friend with Alzheimer's disease who had threatened to kill a third party. Bell said he feared the friend would hurt himself or the third party. Given that the friend lived at the Missouri Hotel, Bell brought the gun to Bodine because Bodine was in charge there. Bell also admitted he had been holding the gun since November 2002—some four months.

Bell was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded not guilty and was tried by a jury on September 22, 2003. The government produced five witnesses against Bell, all of whom Bell's counsel cross-examined. Bell made two motions for judgment of acquittal based on insufficiency of the evidence, both of which the District Court denied. Bell also asked the District Court to instruct the jury on the defenses of coercion, duress, and justification based on Bell's asserted reasons for possessing the gun. Finding the defenses were not supported by the evidence, the District Court refused those instructions. The case was submitted to the jury, and the jury found Bell guilty.

At sentencing, Bell made two objections to the presence investigation report. First, Bell objected to the failure to reduce his base offense level for acceptance of responsibility. The District Court overruled this objection, finding that Bell's pre-trial statements, his decision to go to trial, and his trial testimony were inconsistent with accepting responsibility for his actions. Second, Bell objected to an enhancement of his sentence based on his use of a firearm in connection with another felony. The District Court overruled this objection and imposed the enhancement, finding that Bell had committed a felony under Missouri law by exhibiting the firearm in a threatening manner. The District Court's application of the guidelines resulted in an offense level of 24 and a criminal history score of IV, providing for a sentencing range of 77–96 months. The District Court sentenced Bell to the low end of the guideline range, seventy-seven months, and this appeal followed.

## II.

### A.

Bell first argues that the District Court erred by denying him a sentencing reduction for acceptance of responsibility. Bell claims he went to trial *solely* to assert the defense of justification and that he was entitled to the reduction because he never challenged his factual guilt. The government contends Bell went to trial to put the government to its burden of proof and that Bell was therefore ineligible for the reduction. We review the District Court's decision to deny an acceptance-of-responsibility reduction for clear error. United States v. Patten, 397 F.3d 1100, 1104 (8th Cir. 2005); United States v. Waldman, 310 F.3d 1074, 1079 (8th Cir. 2002).

"The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[, and] the determination of the sentencing judge is entitled to great deference on review." U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.5 (2003). The guidelines define the "acceptance of responsibility" reduction and provide notes regarding its application. For example, a defendant who falsely denies or frivolously contests his relevant conduct has not accepted responsibility. Id. cmt. n.1(a). A defendant convicted at trial may receive the reduction, but only in "rare situations" where the defendant's purpose at trial was to assert issues unrelated to factual guilt. Id. cmt. n.2. Specifically, the reduction is "not intended to apply to a defendant who puts the government to its burden of proof at trial . . . , is convicted, and only then admits guilt and expresses remorse." Id. As simply stated at oral argument, Bell was not entitled to the reduction if his trial purpose was to "beat the rap."

After reviewing the record, we find Bell's claim that he did not challenge his factual guilt is contradicted by his trial motions and strategy. As mentioned previously, counsel for Bell made two motions for judgment of acquittal based on insufficiency of the evidence, both of which the District Court denied. Bell also cross-examined all five of the government's witnesses, including an expert who testified that the gun Bell possessed had moved in interstate commerce.[3] Counsel for Bell first objected to the expert's qualifications, then asked the expert arguably irrelevant questions as to who may have imported the gun into Missouri, and finally asked the expert if counterfeit guns were ever manufactured in this country. While this strategy was consistent with Bell's right of confrontation, it was inconsistent with relieving the government of its burden of proof at trial. Such tactics were squarely

---

[3]Proof that the firearm traveled in interstate commerce was a required element for Bell's conviction under § 922(g). 18 U.S.C. § 922(g)(1) (2000); Trial Tr. at 56 (referencing Eighth Circuit Manual of Model Jury Instructions (Criminal), Instruction 6.18.922 (2003)).

aimed at challenging the government's evidence against the defendant. In addition, if Bell's only purpose at trial was to assert the justification defense, he could have pleaded guilty after the District Court disallowed the defense. Instead, Bell took his chances and let the case go to the jury.

Moreover, we have consistently refused to recognize justification as a defense where the defendant failed to pursue lawful options, particularly when violating § 922(g)(1). See, e.g., United States v. Lomax, 87 F.3d 959, 961–62 (8th Cir. 1996); United States v. Taylor, 122 F.3d 685, 688–89 (8th Cir. 1997). Although Bell claims he took the gun to prevent threatened harm to a third party, the District Court determined this claim was not credible, finding a lack of the requisite "immediacy" of harm. Trial Tr. at 58. Even crediting Bell's story, we agree that Bell had a number of lawful options available other than holding the gun for four months, bringing it to the Missouri Hotel, pointing it at two people, and asking if he had their attention. In these circumstances, we have no difficulty in sustaining the District Court's refusal to allow the justification defense.

Finally, Bell places great emphasis on the guidelines comment that the acceptance-of-responsibility determination is to be "based primarily upon pre-trial statements and conduct" of the defendant. U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.2 (2003). This emphasis is misplaced. The language to which Bell refers applies only to "rare situations" in which the defendant has gone to trial for purposes other than to challenge factual guilt. Id. By contrast, the guidelines unequivocally state that the acceptance-of-responsibility reduction is not intended to apply where, as here, the defendant has put the government to its burden of proof at trial. Id. Were we to consider Bell's pre-trial conduct, however, we note that Bell lied to police about his previous felony conviction and only admitted the conviction after the police learned about it through a criminal background check. Bell's assertion that he "at first remained silent" about the conviction but later "affirmed" it upon

direct questioning misrepresents his deceptive conduct. Appellant's Opening Br. at 15.

But to be "responsible" is to "answer for one's conduct." Webster's Third New Int'l Dictionary 1935 (1981). Bell denied his prior felony arrest, he challenged the evidence against him, he insisted his possession of the gun was justified, and he showed no remorse until after his conviction. We therefore cannot say the District Court's decision to deny Bell a sentencing reduction for acceptance of responsibility was clearly erroneous.

**B.**

Pursuant to the guidelines, the District Court made a four-level increase to Bell's offense level after finding that he had possessed a firearm in connection with another felony offense. See U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) & cmt. n.7 (2003). Specifically, the District Court found that Bell exhibited the firearm in a threatening manner—a felony under Missouri law. Bell contends there was no factual or legal basis for finding his actions were objectively rather than subjectively threatening as required by Missouri case law.

We review de novo whether Bell's sentence was imposed in violation of law or as the result of the District Court's incorrect application of the sentencing guidelines. See 18 U.S.C. § 3742(f)(1) (2000); United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005). We review for clear error the District Court's factual findings used to enhance the sentence pursuant to § 2K2.1(b)(5). See Mashek, 406 F.3d at 1017. It is a felony in Missouri to "[e]xhibit[], in the presence of one or more persons, any weapon readily capable of lethal use in an angry or *threatening manner*." Mo. Rev. Stat. § 571.030.1(4) (2000) (emphasis added). Whether the manner of

exhibition is "threatening" is to be determined objectively and not based on the victim's subjective perception of danger. State v. Williams, 779 S.W.2d 600, 603 (Mo. Ct. App. 1989) (citing State v. Murry, 580 S.W.2d 555, 557 (Mo. Ct. App. 1979)). Under Missouri law, pointing a firearm at a victim can be an objective threat even if the victim testifies he did not feel threatened. Murry, 580 S.W.2d at 557. There is no requirement that the gun be loaded, nor is there an express requirement of a verbal threat. See State v. Overshon, 528 S.W.2d 142, 143 & n.1 (Mo. Ct. App. 1975).

We agree with the District Court that Bell possessed the gun in connection with another felony. The undisputed evidence showed that Bell pointed a gun at two people, first at Sally Granger and next at David Bodine, and without explanation asked if he had their attention. In the case of Bodine, Bell had his finger on the trigger. We need not interpret Bell's ambiguous requests for attention, and it is "immaterial" that the gun was not loaded at the time. See id. at n.1. This evidence was a sufficient basis for the District Court's finding that Bell exhibited the gun in an objectively threatening manner.

In making this finding, the District Court does not appear to have relied on the victims' subjective fear. The District Court stated that "pointing a gun at somebody and asking them if you've got their attention is a threatening action." Sent. Tr. at 12. Although the District Court plainly considered the victims' perceptions, the fact the victims *actually* felt threatened by Bell's conduct did not diminish the objective threat any more than if they had *not* felt threatened. See Murry, 580 S.W.2d at 557. We cannot conclude the District Court improperly relied on the subjective fear of the victims, nor can we say the District Court clearly erred in finding that Bell possessed the gun in connection with another felony offense. We therefore sustain the District Court's finding and the imposition of the four-level increase based on that finding.

-8-

## C.

In his supplemental brief, Bell claims the four-level enhancement of his offense level pursuant to § 2K2.1(b)(5) of the guidelines violated his Sixth Amendment rights under the Supreme Court's holding in Blakely. In Booker, the Supreme Court held that the reasoning of Blakely applied to the United States Sentencing Guidelines. Booker, 125 S. Ct. at 749. The Court held that the guidelines' mandatory sentencing provisions caused a Sixth Amendment violation that could be remedied by rendering the guidelines advisory. Id. at 756–57. The Court then directed reviewing courts to apply the Booker holding to "all cases on direct review," as well as to determine "whether the [Sixth Amendment] issue was raised below and whether it fails the 'plain-error' test." Id. at 769. Bell concedes he is raising his Sixth Amendment claim for the first time on appeal and therefore that our standard of review is for plain error. Appellant's Supp. Br. at 6.

Under the plain-error standard of review, we will not grant relief unless 1) there was error, 2) the error was plain (i.e., clear or obvious), 3) the error affected the substantial rights of the aggrieved party, and 4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) (citing United States v. Olano, 507 U.S. 725, 732–36 (1993), and Johnson v. United States, 520 U.S. 461, 466–67 (1997)). We have determined that where, as here, the District Court sentenced a defendant pursuant to the mandatory, pre-Booker guidelines, the first two plain-error factors are satisfied. Id. In Pirani, we refined the test for the third plain-error factor under a Booker claim, holding it is satisfied by showing a "reasonable probability, based on the appellate record as a whole, that but for the error [the defendant] would have received a more favorable sentence." Id. at 552 (internal quotation marks omitted). As the party claiming error, Bell has the burden of showing the plain-error factors are satisfied. See id. at 550 (citing Olano, 507 U.S. at 734–35).

Although Bell's brief does not argue that he would have received a more favorable sentence under the advisory, post-Booker guidelines system, we look to the appellate record to determine whether it would support such a contention. See id. at 553. After Bell made his statement asking for leniency at sentencing, the District Court stated,

> Mr. Bell, as I told you, this is a strange case, and I'm put in a position with the conviction you have and the different stories that we've had that don't provide a good explanation for what happened that there's not a lot of choice here in terms of, as I see it, the offense level we're dealing with, and your criminal history speaks for itself. Seventy-seven months is a long time. I'm going to give you the minimum under the guidelines but that's still a long time. I don't know. When I think of your actions that day, I don't know I can say you had an intent to hurt anybody or anything like that. It doesn't seem so the way you conducted yourself. But as I said before, that was strange behavior. But it was – as you said, it's serious . . . [a]nd I have to deal with it that way. So based on that, my intended sentence will be the low end of the guideline, the 77 months . . . .

Sentencing Tr. at 19–20. Although the sentence imposed by the District Court was at the bottom of the guidelines range, this was "the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error." Pirani, 406 F.3d at 553. By contrast, the District Court considered Bell's conduct to be strange and serious. Taken as a whole, the District Court's statements leave the effect of the Booker error uncertain, indeterminate, and speculative. See id. (citing United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005)). Therefore, as in Pirani, Bell has not shown a reasonable probability that his sentence would have been more favorable absent the Booker error. Because Bell has not shown this third plain-error factor to

be satisfied, we need not consider the fourth factor. <u>See</u> <u>id.</u> We deny the relief sought by Bell on his Sixth Amendment claim.

## III.

For the reasons stated, the judgment of the District Court is affirmed.

_____