# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3821

———————

United States of America,

           Appellee,

    v.

George Bing Tonks, also known as
Ian William Stone,

           Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Northern District of Iowa.
\*
\*
\*
\*

———————

Submitted: June 12, 2009
Filed: July 29, 2009

———————

Before MURPHY, SMITH, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

The appellant, George Bing Tonks, pled guilty to two counts of wire fraud in violation of 18 U.S.C. § 1343. The district court[1] imposed a sentence of 78 months imprisonment on each count to run consecutively to undischarged terms of imprisonment imposed on Tonks in Pennsylvania and New York.[2] In this appeal,

———————

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

[2] On May 6, 2008, Tonks pled guilty in the United States District Court for the Southern District of New York to one count of conspiracy to commit wire fraud and

Tonks contends that the district court erred in denying a reduction of his offense level for acceptance of responsibility and in ordering that his sentence run consecutively to the undischarged portions of his New York and Pennsylvania sentences. We affirm.

From August 2002 through June 2003, under Tonks's direction and with his assistance, Tonks's fellow schemers contacted an elderly Iowa woman via telephone from Brooklyn, New York. They knowingly and falsely represented to her that she had won a large cash lottery prize but that, in order to receive the proceeds, she was required to pay taxes and other fees up-front. During this time period, the victim was instructed to transfer multiple amounts of cash, purportedly to pay these taxes and fees, to various recipients in the New York City area. The victim was instructed to use a name other than her own in making some of these wire transfers, and she was frequently told not to retain the receipts. Further, she was instructed not to reveal her lottery winnings or discuss the matter with others. The elderly victim did as instructed and, on 16 occasions, wired cash sums totaling over $200,000 to the addresses

---

one count of wire fraud in connection with a scheme executed by Tonks and others to defraud individuals of money allegedly required as advance fees necessary to secure roles for the victims in adult motion pictures. Tonks was sentenced to a term of 115 months imprisonment. See United States v. Stone, No. 1:06-cr-00771-PAC (S.D.N.Y. 2008), appeal docketed, No. 08-2378-cr (2d Cir. May 13, 2008).

On September 9, 1993, Tonks entered a plea of guilty in the United States District Court for the Eastern District of Pennsylvania to one count of mail fraud, one count of money laundering, and one count of contempt. He was sentenced to a term of 37 months of imprisonment to be followed by five years of supervised release. See United States v. Dupont, No. 2:93-cr-00192-CRW (E.D. Pa. Sept. 30, 1993). On January 7, 2008, the United States District Court for the Northern District of Illinois, which had obtained jurisdiction over Tonks's supervised release in 1999, revoked Tonks's supervised release and sentenced Tonks to a term of imprisonment of nine months to run concurrent to the term of imprisonment imposed in the Southern District of New York. See United States v. Tonks, No. 1:99-cr-00911-1 (N.D. Ill. Jan. 7, 2008).

provided. Tonks and his accomplices retained the proceeds of the scheme, and the victim received nothing.

Tonks was indicted on 19 counts of wire fraud, and he subsequently entered into a plea agreement. The plea agreement provided for Tonks's guilty plea to two counts of wire fraud, for the United States to move for dismissal of the remaining counts, and for Tonks's stipulation that he would pay full restitution to the victim. The plea agreement also contained a stipulation of the facts involved in the offense conduct, expressed the expectation that a reduction of offense level would be awarded for acceptance of responsibility, and indicated that the United States would move for an additional offense-level reduction for Tonks's timely acceptance of responsibility.

At sentencing, the district court noted that the Presentence Investigation Report recommended a two-level decrease in offense level for acceptance of responsibility, see United States Sentencing Commission, Guidelines Manual, §3E1.1(a) (Nov. 2002), and contemplated that the United States would move for an additional one-level reduction for Tonks's timely acceptance of responsibility. Id. §3E1.1(b). The district court asked Tonks if he persisted in his pleas of guilty. In response, Tonks hesitated, then he stated "yes." When the court inquired as to whether the hesitation indicated that Tonks no longer wished to plead guilty, Tonks stated that, although there was "no actual evidence" against him, he had no choice but to plead guilty because of his "past" and because of witnesses who the government had "made deals with to testify" against him. In response to Tonks's comments, the district court indicated that it was tentatively declining to grant an acceptance-of-responsibility adjustment. Tonks's attorney advised the court that Tonks had agreed to a detailed factual recitation of what had occurred as detailed in the plea agreement and that Tonks's lack of an objection to a four-level leadership role enhancement was indicative of Tonks's acceptance of "his involvement and responsibility with respect to this entire scheme." The United States agreed that, in the plea agreement, Tonks had stipulated to the underlying facts of the case. Further, the United States advised

the district court that if the court granted a two-level acceptance-of-responsibility adjustment, the United States would move for an additional reduction of one level pursuant to section 3E1.1(b).

At that point, Tonks elected to speak further and launched a rambling attack on federal law enforcement agents who apparently had been involved in the investigation which led to his New York federal prosecution. Tonks accused agents of drugging and torturing him, and he accused various federal prosecutors of misconduct. He further denied guilt with respect to the New York prosecution and complained about the sentence imposed in that case.

Turning to the case at hand, Tonks denied knowledge of the bogus lottery scheme and denied receiving any of the proceeds of the scam perpetrated on the Iowa victim. He denied personal participation in "any type of lottery business" and termed his only culpability as a failure to supervise telemarketers working for him who "stole thousands of dollars from several customers without [his] knowledge."

The district court found that Tonks's in-court statements demonstrated that he took no responsibility for the defrauding of the Iowa victim and espoused Tonks's view that he was the victim. The court stated that Tonks's comments "basically negate[] everything that he said in the Stipulation of Facts that led to the plea agreement." Accordingly, the court declined to grant an acceptance-of-responsibility adjustment. The court calculated Tonks's base offense level at 6, see USSG §2B1.1(a); assessed a 12-level increase based upon the amount of loss to the victim, see id. §2B1.1(b)(1)(G); and added 4 levels due to Tonks's role as a leader/organizer, see id. §3B1.1(a), resulting in an adjusted offense level of 22.

The adjusted offense level of 22, combined with a criminal history category of IV, yielded a sentencing range of 63-78 months. After considering the sentencing factors specified under 18 U.S.C. § 3553(a), the district court imposed a sentence of

78 months imprisonment on each count with the terms of imprisonment to run concurrently with each other but consecutively to the undischarged portion of the terms of imprisonment imposed in the Eastern District of Pennsylvania and the Southern District of New York.

On appeal, Tonks first asserts that the district court erred in denying him an acceptance-of-responsibility adjustment pursuant to section 3E1.1. "A defendant bears the burden of establishing entitlement to a downward adjustment for the acceptance of responsibility." United States v. Tjaden, 473 F.3d 877, 879 (8th Cir. 2007). "We review the District Court's decision to deny an acceptance-of-responsibility reduction for clear error," United States v. Bell, 411 F.3d 960, 963 (8th Cir. 2005), and we accord "great deference on review" to this determination by the sentencing court, id. (quoting USSG §3E1.1, comment. (n.5)). "We do not substitute our judgment for that of the district court because the district court is in a better position to assess whether a defendant has accepted responsibility . . . . Our review, then, is not to determine what conclusion we might reach in the case were we to sit as the finders of fact, but to determine whether the district court's factual findings amount to clear error." United States v. Jones, 539 F.3d 895, 897 (8th Cir. 2008).

Tonks asserts that his statements at sentencing addressed mistreatment and an unjust result that he believes occurred in the previous New York federal prosecution. According to Tonks, it was in that proceeding that he was victimized, and the district court in this case "focused" in error on these remarks about the prior prosecution to determine that Tonks was unwilling to accept responsibility in this case. Tonks argues that the district court failed to give sufficient weight to his pleas of guilty, his admission of the factual basis for the pleas submitted under oath before a magistrate judge during the earlier plea proceeding, and his stipulation of facts contained in the plea agreement.

We find no clear error in the district court's denial of an acceptance-of-responsibility adjustment. While much of Tonks's statement at sentencing was directed at his prior New York prosecution, he clearly denied participation in or knowledge of the mail fraud scheme perpetrated on the elderly Iowa victim, and he unequivocally asserted that his only fault lay in his failure to supervise telemarketer employees whom he claimed were the actual culprits. A defendant who pleads guilty is not entitled to a downward acceptance-of-responsibility adjustment as a matter of right. United States v. Spurlock, 495 F.3d 1011, 1015 (8th Cir.), cert. denied, 128 S. Ct. 687 (2007). The district court was entitled to decline to find acceptance of responsibility where, notwithstanding his previous admissions, Tonks expressly and unequivocally denied his factual guilt, and we find no clear error in the district court's decision to deny Tonks an acceptance-of-responsibility adjustment..

Tonks's second assertion on appeal is that, in ordering that his sentence run consecutively to the undischarged New York and Pennsylvania sentences, the district court imposed an unreasonable sentence and failed to explain its reasons for imposing a consecutive sentence. "We review the district court's decision to impose a consecutive or concurrent sentence for reasonableness." United States v. Winston, 456 F.3d 861, 867 (8th Cir. 2006). "The district court must explain its reasoning for imposing a concurrent or consecutive sentence '[f]or this court to properly carry out the appellate review mandated by Booker . . . .'" Id. (quoting United States v. Shafer, 438 F.3d 1225, 1227 (8th Cir. 2006)).

Under 18 U.S.C. § 3584(b), the sentencing court, "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." The advisory Sentencing Guidelines provide further procedural guidance as to this issue. Guidelines section 5G1.3(c) provides in a policy statement that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term

of imprisonment to achieve a reasonable punishment for the instant offense." Application note three to section 5G1.3 further instructs:

> To achieve a reasonable punishment and avoid unwarranted disparity, the court should consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)) and be cognizant of:
>
> (a) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
> (b) the time served on the undischarged sentence and the time likely to be served before release;
>
> (c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
> (d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

USSG §5G1.3, comment. (n.3).

In this case, the district court followed these procedural directives. The court expressly referred to section 5G1.3(c) and the accompanying application note as well as the application note's comment that section 3584 and its reference to section 3553(a) be considered. The court discussed the section 3553(a) factors and their applicability including: the nature and circumstances of the offenses of conviction; the kinds of sentences available; Tonks's history and characteristics, noting his age, education, and his history of drug use; Tonks's criminal history, including the Pennsylvania and New York convictions as well as an unscored juvenile record; the need to protect the public; and the court's well-justified observation that Tonks appeared at sentencing "totally unrepentent." After expressly considering the

foregoing, the court concluded that "the facts and circumstances of this offense support a consecutive sentence, and that will be what the Court imposes."

We conclude that the district court thoroughly discussed the section 3553(a) factors it found applicable and adequately explained the reasons for its imposition of a consecutive sentence. The imposition of a consecutive sentence is reasonable.

We affirm.

———————————