# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3298

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jack Straw, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2010
Filed: August 5, 2010

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Jack Straw appeals the 180-month sentence imposed following conviction for four counts of wire fraud in violation of 18 U.S.C. § 1343, one count of mail fraud in violation of 18 U.S.C. § 1341, one count of making, possessing, and uttering a forged security in violation of 18 U.S.C. § 513(a), and one count of money laundering in violation of 18 U.S.C. § 1957. Straw contends the district court[1] improperly heard testimony by a non-victim at sentencing, erroneously enhanced Straw's sentence on

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

the basis that his crime involved fifty or more victims, and unreasonably varied upward from the Guidelines in imposing Straw's sentence. We affirm.

I

Jack Straw owned and operated an insurance business in which he acted as a financial advisor, maintained trust accounts, and sold annuities and insurance policies to his clients. Straw operated several fraudulent schemes in conjunction with his business. During the relevant period: (1) Straw took more than $180,000 in client funds which he claimed to invest in stocks, but which he actually used for his own purposes or to pay prior victims in order to conceal his fraud; (2) Straw sold real property that he did not have permission from the owners to sell and kept the $399,932.54 in purchase money; (3) Straw forged client signatures on checks; (4) Straw used a client's bank account to make automatic payments of sixteen dollars per month on a life insurance policy for his son-in-law (on which his daughter was named beneficiary); and (5) Straw held a financial planning seminar in which he offered to prepare wills for participants for a fee of $50 per will. He collected money but never prepared the wills. Straw defrauded a couple from that seminar of approximately $60,000 in his annuities scheme. Most of the money given to Straw by his clients remains unaccounted for.

On December 2, 2008, Straw was charged in a seven-count information: four counts of wire fraud in violation of 18 U.S.C. § 1343, one count of mail fraud in violation of 18 U.S.C. § 1341, one count of making, possessing, and uttering a forged security, in violation of 18 U.S.C. § 513(a), and one count of money laundering, in violation of 18 U.S.C. § 1957. Straw pleaded guilty to all charges. The district court found Straw's base offense level under the United States Sentencing Guidelines Manual (U.S.S.G.) to be seven and imposed an eighteen-level increase for an intended loss of $3,041,805.68, a four-level increase because the offenses involved more than fifty victims, a two-level increase because one or more of the victims were vulnerable

victims, and a two-level increase for abusing a position of trust. Straw was awarded a three-level reduction for acceptance of responsibility. The district court found Straw's criminal history category to be I, and, using an offense level of thirty, calculated an advisory guidelines range of 97-121 months. After considering Straw's request for a downward variance and all the 18 U.S.C. § 3553(a) sentencing factors, the district court varied upward and imposed a sentence of 180 months' imprisonment followed by three years of supervised release and $700 in mandatory special assessments. This timely appeal followed.

## II

Straw first challenges the district court's decision to hear the testimony of Straw's cousin at the sentencing hearing. Several victims testified at Straw's sentencing hearing; in the midst of the testimony, Straw's cousin Jodie Hansen gave a brief statement indicating Straw had defrauded their 91-year-old grandmother and had not come to see their grandmother the day she died. Straw was charged with intentionally misappropriating the grandmother's property in 2002 but the district attorney dropped the charges.

Because Straw failed to object to Hansen's testimony at the sentencing hearing, we review under the plain error standard. See United States v. Shepard, 462 F.3d 847, 870 (8th Cir. 2006); United States v. Montayne, 996 F.2d 190, 192 (8th Cir. 1993) (en banc). Straw argues his cousin should not have been permitted to testify because she is not a "crime victim" entitled to a right to be heard at public proceedings under the Crime Victim's Rights Act. 18 U.S.C. § 3771(e). This provision defines a "crime victim" as "a person directly and proximately harmed as the result of the commission of a federal offense." Id. Even though 18 U.S.C. § 3771(a) grants a crime victim the right to be heard at public proceedings, the statute does not operate to *exclude* others from being heard at such proceedings. Congress has provided that "[n]o limitation shall be placed on the information concerning the background,

character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Furthermore, in sentencing, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, *or the source from which it may come*. . . ." United States v. M.R.M., 513 F.3d 866, 870 (8th Cir. 2008) (quoting United States v. Tucker, 404 U.S. 446 (1972)) (emphasis added). Therefore it was not plain error for the district court to hear Hansen's statement because the statement concerned Straw's background, character, and conduct.

Straw further contends the district court improperly considered Hansen's testimony as a victim impact statement. While the court and the prosecutor did refer to the cousin as a "victim" in passing, it is clear all parties were aware of who she was and who she represented. The district court spoke at length to explain the sentence and did not mention the prior conduct related to Straw's grandmother. We conclude the district court did not erroneously consider the cousin's statement as victim impact testimony.

III

Straw next challenges the district court's enhancement of his offense level by four levels because his offense involved fifty or more victims. He contends the district court erred by counting the victims of his uncharged wills-and-estate-planning scheme and by counting each married couple as two victims. "We review the district court's interpretation and application of the guidelines de novo and its finding of fact for clear error." United States v. Icaza, 492 F.3d 967, 969 (8th Cir. 2007). Section 2B1.1(b)(2) of the sentencing guidelines provides: "If the offense . . . (B) involved 50 or more victims, increase by 4 levels . . . ." Section 2B1.1, Application Note 1, defines "victim" as "any person who sustained any part of the actual loss determined

-4-

under subsection (b)(1) . . . 'Person' includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."

Straw contends the district court incorrectly counted as victims the twenty people he defrauded in his wills-and-estate-planning scheme for the purposes of the U.S.S.G. § 2B1.1(b)(2) enhancement because the nature of the offense against those victims was different and because many of his egregious behaviors did not apply to those victims. U.S.S.G. § 1B1.3(a)(2) provides "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction" may be considered as factors that determine the Guidelines range. "Offenses . . . may . . . qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, Application n. 9. In United States v. Lewis, 557 F.3d 601, 614 (8th Cir. 2009) (quoting United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007)), we stated that "we take a broad view of what conduct and related loss amounts can be included in calculating loss," and we applied the same reasoning to a calculation of victims, rejecting a defendant's contention that only victims named in the indictment should be counted for the purposes of U.S.S.G. § 2B1.1(b)(2)(B). See also United States v. Branch, 591 F.3d 602, 612 (8th Cir. 2009) (considering testimony from victims of several of the defendant's fraudulent schemes for the purposes of a U.S.S.G. § 2B1.1(b)(2)(B) enhancement).

Straw routinely used his financial seminars to meet and develop relationships with potential victims and to determine whether they possessed assets he could steal. Once he found the assets, Straw used one or more of his schemes to defraud his new clients. Straw operated according to this pattern in 2006, when he met twenty new potential victims at one of his financial planning seminars. Straw falsely promised these individuals and couples he would provide wills for $50. Straw collected their money and never provided wills, and he proceeded to defraud one of these couples out

of nearly $60,000 using his annuity scheme. Given the fact that the victims of Straw's wills-and-estate-planning scheme overlapped with the victims of other schemes, and that Straw used those seminars to find new victims for his other crimes and assess their financial situations, it was not clearly erroneous for the district court to determine they were part of the same course of conduct. Therefore, the district court properly counted the twenty wills-and-estate-planning victims when it applied U.S.S.G. § 2B1.1(b)(2).

Straw also challenges the district court's decision to count each member of the married couples as a separate victim. Straw contends each of the thirteen married couples should have been counted as a single victim, and that the government did not prove that the funds invested in his schemes were jointly held or invested on behalf of both members of each couple. The Presentence Investigation Report (PSR) stated that Straw stole funds from thirteen married couples. Although the PSR determined each married couple constituted a partnership (and therefore a single victim), the district court found that the PSR incorrectly counted each married couple as only one victim and recounted the thirteen married couples as twenty-six separate victims. This put Straw over the fifty victims necessary for enhancement under U.S.S.G. § 2B1.1(b)(2)(B).

In United States v. Densmore, 210 Fed. Appx. 965 (11th Cir. 2006) (unpublished) (cited with approval in United States v. Ellisor, 522 F.3d 1255 (11th Cir. 2008)), the Eleventh Circuit found it was appropriate to count each member of the married couples who had invested in a defendant's fraudulent schemes as a separate victim. The Densmore court relied on the language defining a victim as "any person who sustained any part of the actual loss" in U.S.S.G. § 2B1.1, Application Note 1, to find that both persons in a marriage suffered loss when jointly held money was taken or when the investment was made on behalf of both persons. Densmore, 210 Fed. Appx. at 971. We do not need to decide whether the district court erred by

counting each married person individually because the record demonstrates any error in application of the enhancement would be harmless.

Incorrect application of the Guidelines is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence. United States v. Vickers, 528 F.3d 1116, 1121 (8th Cir. 2008). Where "the record clearly . . . show[s] not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range," United States v. Johnston, 533 F.3d 972, 978 (8th Cir. 2008)(quoting United States v. Icaza, 492 F.3d 967, 971 (8th Cir. 2007)), any error in applying an enhancement for number of victims is harmless. Here, the district court stated:

> So I will score Paragraphs 114 and 115 as a four-point increase as opposed to a two-point increase [for number of victims]. Alternatively, if the Court is incorrect in its interpretation of the guidelines, the Court would depart under United States sentencing guidelines. I would depart upward two levels because, in light of the unusual circumstances, the weight attached to the number of victims under the guidelines would be inadequate if there were only a two-level increase for the number of victims.

Straw has not argued the district court could not have departed upward under these circumstances. Since the district court clearly stated that it intended to provide an alternative sentence that was based upon a correctly calculated Guidelines range, any error in applying an enhancement for number of victims is harmless.

IV

Finally, Straw contends the district court's upward variance constituted an abuse of discretion. We review the district court's sentencing, whether inside or

-7-

outside the guidelines range, for an abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). We first review for procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." Id. If no procedural error has been committed, we review the sentence for substantive reasonableness under an abuse of discretion standard. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009)(en banc). The burden is on the appellant to show that his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a). United States v. Milk, 447 F.3d 593, 603 (8th Cir. 2006).

Straw first contends the district court committed procedural error by failing to take his mental condition and acceptance of responsibility into account at sentencing. The PSR contains extensive information about Straw's mental health history, including his diagnosis of Bipolar Disorder and Adult Antisocial Behavior, and the time he spent near the time of his arrest in a mental health facility into which he checked himself voluntarily just as his crimes were discovered. The sentencing record reflects his history of depression, and includes letters written by his wife and children describing his history and requesting leniency. Even though the district court did not mention Straw's mental health issues when it discussed the upward variance, it stated that it would not remand Straw to a mental health facility because the prison system was equipped to treat his conditions adequately. In United States v. Wood, 587 F.3d 882, 884 (8th Cir. 2009) we considered a sentence where the district court did not address the defendant's mental health issues on record during sentencing, although there had been argument on the issue and the district court specified it had reviewed all submitted materials, including a competency examination. The district court is not required to address on record every reasonable argument set forth by a defendant, and we presume the district court considered relevant § 3553(a) factors at sentencing. See

id. The record shows the district court was aware of Straw's mental health issues and there is no evidence it disregarded them in varying upward.

Straw next challenges the reasonableness of his sentence, arguing the district court did not have justification for an upward variance because Straw's crimes were not out of the ordinary and the Guidelines contemplated all the aggravating factors. We have consistently rejected this type of argument. See United States v. Chase, 560 F.3d 828, 831 (8th Cir. 2009) ("[F]actors that have already been taken into account in calculating the advisory guideline range . . . can nevertheless form the basis of a variance."); United States v. Ruvalcava-Perez, 561 F.3d 883, 887 (8th Cir. 2009) (rejecting claim of unreasonable variance where the district court varied upward based on a defendant's domestic violence convictions, which were already accounted for by the Guidelines.). The district court repeatedly emphasized issues accounted for by the Guidelines and specified which portions of the criminal conduct were not adequately addressed by the Guidelines. The district court acknowledged that the Guidelines accounted for the amount of the fraud, the number of victims, and the vulnerability of the victims (many of whom were elderly). However, the district court stated the Guidelines failed to take into account: (1) the fact Straw targeted the victims close to retirement and targeted their retirement assets knowing they would have little or no opportunity to replace those assets before their intended retirement dates; (2) the serious impact of Straw's fraudulent schemes on the victims of the crimes; (3) the fact that Straw used a variety of methods to defraud his victims and each scheme separately required significant premeditation and careful planning; and (4) Straw's production of false documents to lull his victims and his lack of intent to ever invest the funds he received.

Straw points to United States v. Finn, 206 Fed. Appx. 631 (8th Cir. 2006) (unpublished) and United States v. Tonks, 574 F.3d 628 (8th Cir. 2009), as evidence he was improperly sentenced. In Finn, the defendant was sentenced at the top of the Guidelines range to 135 months' imprisonment for fraudulently receiving more than

$3.7 million from over 100 investors. The difference between a sentence of 135 months at the top of the Guidelines range and a variance upward to 180 months does not constitute the kind of disparity that would render Straw's higher sentence unreasonable. This difference is supported by the aggravating factors set forth by the district court, including the significant impact that Straw's fraud had upon his elderly victims, the fact that he specifically targeted victims close to retirement age, and the wide variety of schemes Straw employed to defraud his victims. In Tonks the defendant was sentenced to 78 months' imprisonment for cheating a single elderly victim out of over $200,000. Tonks, 574 F.3d at 630. Tonks' sentence of seventy-eight months for stealing $200,000 from a single victim does not demonstrate Straw's sentence for stealing more that $3 million from multiple victims in multiple schemes created unwarranted disparity.

The district court adequately justified the upward variance and we cannot conclude the district court abused its discretion in doing so. Straw has failed in his burden to show his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a).

V

Accordingly, we affirm the judgment of the district court.

_____

-10-