# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1101

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Rocio Ortiz, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 19, 2010
Filed: April 11, 2011

_____

Before RILEY, Chief Judge, BYE and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Caught with a van load of shoplifted merchandise, Rocio Ortiz pled guilty to interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2. The district court[1] found Ortiz was involved in a sophisticated national shoplifting ring, which moved around the United States stealing from retail stores. Ortiz appeals her sentence, arguing the district court erred in (1) permitting testimony from representatives of victim stores regarding the overall losses the stores experience

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

nationally from organized shoplifting enterprises, (2) departing upward from a United States Sentencing Guidelines (U.S.S.G. or Guidelines) range of 41 to 51 months imprisonment to 105 months, and (3) making an improper sentencing assessment in support of the district court's alternative variance from the Guidelines. We affirm.

## I.    BACKGROUND

On October 2, 2008, Cesar Garcia rented a white Dodge Grand Caravan at the Sea-Tac Airport, near Seattle, Washington. The Grand Caravan was due back on October 4. At approximately 8:55 p.m. on October 3, 2008, a Victoria's Secret store in Auburn, Washington, reported to local police the theft of 483 bras and 1,340 panties with a total value of $39,994. At about 7:54 p.m. the next day, a Bellevue, Washington, American Eagle Outfitters store reported twenty-eight stacks of shirts stolen, with an estimated value of $8,997. A camera near the American Eagle store captured images of three men entering and exiting the store thirteen times between 6:36 p.m. and 7:00 p.m. The men entered the store carrying thin dark plastic bags with empty large white shopping bags folded up inside (booster bags), and left with the white bags full of stolen merchandise held close to their bodies while holding the dark bags on the outside for concealment.

On October 5, Garcia exchanged the white Grand Caravan for a blue Caravan, which was due back the next day. Garcia was the only authorized driver of the Caravan.

On October 7, Ortiz was driving the blue Caravan eastbound on Interstate 90 near Chamberlain, South Dakota, when she was stopped for speeding. Ortiz gave the officer a Puerto Rico driver's license in the name of Fidela Molina. The officer "observed there were full, large, black trash bags stacked in the vehicle from behind the front seats to the rear of the caravan." The officer asked Ortiz to join him in his patrol car while he ran the Molina license, which was reported invalid. Ortiz's companion in the blue Caravan also presented an invalid license. The officer three

times asked Ortiz for permission to search the blue Caravan, and she eventually consented. While Ortiz was in the police car, she talked on a cellular telephone until the officer told her to close the phone.

The search revealed eleven large black plastic garbage bags containing 3,442 items weighing 1,195 pounds. Within the bags, the officer found designer clothing with price tags and anti-theft devices still attached, two suitcases, and a bag containing chocolate, purses, watches, and perfume, all later valued at $105,616.29. Ortiz initially said she was paid $2,000 to transport the items, and denied knowing they were stolen, but eventually admitted she knew she was transporting stolen goods. Ortiz refused to tell police where they were taking the goods. When Ortiz began deleting items from her cellular telephone, the police arrested Ortiz and her companion and seized their phones.

Ortiz was charged with interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2. Ortiz ultimately entered into a plea agreement with the government and pled guilty to the charge of the indictment. The plea agreement contained a waiver of defenses and certain appeal rights, including

> all defenses and her right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of her sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

A presentence investigation ensued, ultimately resulting in a Second Amended Presentence Investigation Report (PSR). In the PSR, the probation officer calculated Ortiz's base offense level at 6, then added eight levels for the value of the merchandise stolen pursuant to U.S.S.G. § 2B1.1(b)(1)(E), added two levels for ten or more victims

pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), added two levels for receipt of stolen property pursuant to U.S.S.G. § 2B1.1(b)(4), and added two levels for sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(9)(C), for an adjusted offense level of 20. Ortiz was given full credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 17.

The probation officer noted only two criminal history points in Ortiz's record, placing her in criminal history category II, with an advisory guidelines range of 41 to 51 months imprisonment. The officer also identified two "factors that may warrant departure." First, the probation officer reported Ortiz had pending cases in Florida, Pennsylvania, and Georgia for retail thefts dating back to 1993, and four theft cases that New Jersey, Louisiana, and Utah declined to prosecute. The officer suggested each of these cases would "[m]ost likely" have received one point each had they been convictions, and could support a departure based upon the inadequacy of the criminal history categories pursuant to U.S.S.G. § 4A1.3. However, the probation officer recognized U.S.S.G. § 4A1.1(c) only allows 4 points to be counted under that item, and such a departure, if accepted, would place Ortiz in criminal history category IV. Second, the officer recommended (at the district court's suggestion) that U.S.S.G. § 5K2.21 may sustain an upward departure due to Ortiz's use of "nine different social security numbers during the commission of her criminal acts, which is a federal offense."

The district court sentenced Ortiz to 105 months imprisonment and 3 years supervised release, departing upward based upon the inadequacy of the criminal history categories, pursuant to U.S.S.G. § 4A1.3, because "Criminal History Category II substantially under-represented the seriousness of her actual criminal history and the likelihood she will commit other crimes of this nature."

> The Criminal History Categories II, III, IV, V, and VI were also inadequate. The defendant is almost certainly going to engage in similar

criminal conduct, and the Court concluded nothing has deterred her from committing thefts in the past. . . .

The Court took into account the defendant's longstanding history of flight to avoid prosecution, and for the past 15 years she has derived most of her income from retail thefts. She was involved in a criminal enterprise committing large scale retail thefts around the United States using false names and false social security numbers. The Court found that it shall depart vertically after going to a Criminal History Category VI. The Court moved the defendant's Total Offense Level to 22, with a Criminal History Category of VI, which resulted in a guideline range of 84 to 105 months. The Court sentenced the defendant to 105 months custody. The Court wanted to put a stop to this crime wave and to her victimizing honest merchants around the United States.

The district court also noted it applied a two-level role enhancement pursuant to U.S.S.G. § 3B1.1(c) because Ortiz "was the organizer or leader of the criminal activity in the instant offense." The court also explained it applied a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 because "the defendant attempted to mislead the Court and the probation officer as to her employment activities. She claimed to have been employed by at least three different enterprises that knew nothing about her. . . . Instead, the defendant has been a professional shoplifter." Ortiz appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION
### A. Crime Victims' Rights Act

Ortiz first argues the district court erred in permitting representatives from the victim retailers to testify at her sentencing hearing pursuant to the Crime Victims' Rights Act of 2004 (CVRA), 18 U.S.C. § 3771, "to matters far beyond the scope of her offense." We review a district court's evidentiary determinations for abuse of discretion. See United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005). "The rules of evidence do not apply at sentencing, but information considered by the sentencing court must have 'sufficient indicia of reliability to support [its] probable

accuracy.'" United States v. Bastian, 603 F.3d 460, 466 (8th Cir. 2010) (quoting United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005)). In addition, if a defendant's victim exercises his right to be reasonably heard at the defendant's sentencing hearing, the sentencing court *must* allow the victim to be reasonably heard. See 18 U.S.C. § 3771(b)(1) (commanding that "the court shall ensure that the crime victim is afforded the rights" enumerated in the CVRA). Although the CVRA requires the district courts to grant victims a reasonable hearing, the statute does not require courts to assign any particular weight to such statements, or indeed to consider them at all if the statements lack the requisite indicia of reliability or relevancy.

At sentencing, "Ortiz objected to any testimony by representatives of the victims beyond the scope of this offense." The district court overruled Ortiz's objection, replying, "I think Congress has clearly indicated in the [CVRA] that victims are to be given broad latitude in addressing the Court at a sentence hearing. And if it's something that goes beyond and into some other area that isn't relevant, I won't pay attention to it." The district court then permitted representatives from Victoria's Secret, The Gap, Inc., and American Eagle Outfitters (collectively, the merchants) to testify not only about offense-related losses, but also, as Ortiz argues, "about retail theft losses they suffered annually nationwide from all organized retail thefts."

The CVRA provides, "A crime victim has the following rights: . . . (4) The right to be reasonably heard at any public proceeding in the district court involving . . . sentencing . . . ." 18 U.S.C. § 3771(a). By pleading guilty, Ortiz admitted she stole from the merchants, thereby vesting the merchants with rights under the CVRA. See § 3771(e) ("[T]he term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense."). The question therefore is whether the "right to be reasonably heard" at sentencing is properly limited to presentation of relevant and admissible evidence. It is not. "[I]n sentencing, 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come . . . .'"

-6-

United States v. Straw, 616 F.3d 737, 741 (8th Cir. 2010) (quoting United States v. M.R.M., 513 F.3d 866, 870 (8th Cir. 2008) (relying on United States v. Tucker, 404 U.S. 443, 446 (1972))) (emphasis omitted).

More broadly, a limitation on the district courts' ability to hear testimony only within the "scope of the offense" conflicts with the district courts' authority to vary from the Guidelines "based solely upon policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 552 U.S. 85, 101 (2007). Were we to adopt the rule Ortiz urges and prohibit victims, such as these merchants, from discussing the entire scope of their losses, we would deprive the district courts of information which could aid them in determining whether to vary from the Guidelines based upon policy considerations. The district court did not err in allowing the merchants to testify as to their national losses in this case.

Regardless, Ortiz suffered no prejudice by the admission of the merchants' testimony. As noted above, the district court indicated in fashioning Ortiz's sentence, it would not consider irrelevant testimony offered during the merchants' CVRA statements. Ortiz's argument that "testimony focusing on organized retail loss clearly had an impact on the district court," because the district court "stated it was going to put a stop to Ortiz's crime wave and victimizing of honest merchants," falls flat. Ortiz assumes the district court's reference to a crime wave referred generally to the nationwide problem with organized shoplifting rings, for which Ortiz is obviously not legally responsible. We have reviewed the record and conclude the district court's reference to a crime wave referred only to Ortiz and her co-conspirators. We do not think the district court believed it could put a stop to organized shoplifting generally by sentencing Ortiz harshly. Finding neither error nor prejudice, we reject Ortiz's CVRA argument.

**B.     Departure**

Ortiz maintains the district court erred in departing upward from her PSR's criminal history category of II to a criminal history category VI, and then adding a further offense level for criminal history, because the court did not justify the category increase at each level by comparing Ortiz's conduct to those in that criminal history category. Ortiz bases this assertion on United States v. Cammisano, 917 F.2d 1057, 1063 n.2 (8th Cir. 1990), in which this court held U.S.S.G. § 4A1.3 was "not satisfied by a general recitation that the defendant's criminal history category . . . underrepresents, in the sentencing court's opinion, the defendant's criminal record . . . ." More recently, in United States v. Azure, 536 F.3d 922, 932, 934 (8th Cir. 2007), we reversed and remanded for further findings where the district court failed to discuss sufficiently the intermediate categories between criminal history categories I and VI. Under Azure, the district court may have committed procedural error by not discussing why each intermediate criminal history category was insufficient. Id.

The district court found Ortiz was "a serial shoplifter." The court observed Ortiz had "been charged or convicted of retail theft 16 times. She has used aliases in at least ten of those instances, and used booster bags as her mechanism for achieving the thefts in at least 7 of her 16 charges." Ortiz worked with a "gang of thieves," using aliases and false social security numbers when caught, and then fleeing prosecution. The court found Ortiz derived almost all of her income for the past fifteen years from this national "high-tech, large-scale shoplifting enterprise." Because of the character of Ortiz's criminal history, the court found Ortiz "is a person who is almost certainly going to engage in similar criminal conduct and that her criminal history category substantially underrepresents her actual criminal history, as well as the likelihood that she is going to commit other crimes of this nature." In a detailed discussion, the district court based its finding that the criminal history categories did not capture Ortiz's actual criminal history primarily on Oritz's repeated use of false social security

numbers, which the court regarded as uncharged crimes,[2] her use of aliases, and her "longstanding history of flights to avoid prosecution."

Because the district court stated that "even in the absence of these departures under the Sentencing Guidelines, [the district court] would [have] impose[d] the same sentence," any procedural error was harmless as a matter of law. See, e.g., United States v. Shuler, 598 F.3d 444, 447 (8th Cir. 2010) (quoting United States v. Vickers, 528 F.3d 1116, 1121 (8th Cir. 2008)) ("Because the Guidelines are now advisory, procedural errors in determining the advisory sentencing range are subject to harmless error analysis. Therefore, we have encouraged district courts in resolving a fact-intensive Guidelines issue 'to state whether its resolution of the issue affected its ultimate determination of a reasonable sentence.'"). This is not a case like United States v. Bah, 439 F.3d 423, 431 (8th Cir. 2006), "where the sentencing court pronounced a blanket identical alternative sentence to cover any potential guidelines calculation error asserted on appeal without also basing that sentence on an alternative guidelines calculation."

Under the circumstances of this case, there is no doubt the district court would have imposed the same sentence, and for the same reasons, regardless of any procedural error it may have made in failing to discuss the intermediate criminal history categories. Cf. United States v. Ibarra-Luna, 628 F.3d 712, 718-19 (5th Cir. 2010). We are also satisfied any error in the Guidelines calculation did not influence Ortiz's sentence. Ortiz's departure argument is unavailing.

---

[2]Ortiz argues the district court's consideration of this conduct in its decision to depart under the Guidelines was procedural error. As with the criminal history departure, the record in this case is clear that any such error was harmless.

## C.    Variance

Finally, Ortiz contends the district court did not analyze the § 3553(a) factors with sufficient specificity, "nor did it mention any of the particular section 3553(a) factors."   Ortiz suggests the district court "merely sought to piggyback the requirements of section 3553(a) onto its upward departure declarations without undertaking an assessment of those factors as required by Gall . . . and the precedents of this Court."  As this court has often stated, "Nothing in § 3553(a) or in the Booker remedy opinion requires 'robotic incantations' that each statutory factor has been considered." United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005)).   Under this court's precedent, the only requirement is that the "record demonstrate[] that the district court applied the Guidelines in an appropriately advisory fashion and considered [Ortiz's] plea for leniency based on non-Guidelines factors . . . ." Id.  There is no suggestion that the district court failed to consider Ortiz's plea for leniency or considered the Guidelines mandatory.  On the contrary, the record demonstrates the district court considered the § 3553(a) factors and possessed a keen awareness of its authority to sentence outside the Guidelines.  This argument lacks merit.

## III.    CONCLUSION

We affirm the district court's judgment.

_____