# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2793
_____

United States of America

*Plaintiff - Appellee*

v.

Reva Plunkett

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: April 12, 2024
Filed: June 13, 2024
[Unpublished]
_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Reva Plunkett pled guilty to wire fraud, in violation of 18 U.S.C. § 1343. While the Presentence Investigation Report (PSR) calculated the United States Sentencing Guidelines (USSG) range as 33 to 41 months' imprisonment, after the

district court[1] departed upward from criminal history Category I to Category VI, Plunkett's adjusted Guidelines range was 92 to 115 months' imprisonment. The district court imposed a 94-month sentence, and Plunkett appeals, alleging procedural errors and that her sentence was substantively unreasonable. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Plunkett was the bookkeeper for her in-laws' businesses. Her duties included managing and reconciling business accounts and writing checks for business expenses like payroll and vendor payments. From 2015 to 2022, Plunkett embezzled over $686,000 via numerous checks that she wrote to herself. She disguised these payments in the businesses' accounting systems by recording them as checks payable to vendors for legitimate expenses. After another employee found several check stubs without matching invoices and notified the owners, an internal investigation revealed Plunkett's scheme. When Plunkett was later interviewed by law enforcement, she admitted to stealing the money but explained that she did so because of financial troubles associated with her children's increasing medical bills.

Plunkett was charged with 13 counts of wire fraud but pled guilty to one count pursuant to her plea agreement in exchange for dismissal of the remaining counts. Before sentencing, the district court notified the parties of its intent to depart upward based on its belief that the Category I criminal history score reflected in the PSR severely understated Plunkett's crimes, in part because it viewed each fraudulent check as a separate instance of wire fraud. The district court noted that Plunkett "has been dishonest and committing one crime after another for at least 10, probably 14, years," and her criminal history category was properly Category VI because "[s]he is, in fact, off the chart." Plunkett did not object to the district court's

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

characterization of the duration of her conduct, and it was never mentioned during the sentencing hearing.

Near the beginning of the sentencing hearing, the district court asked the Government whether Plunkett had paid any income taxes on the money she had stolen or whether the Government had investigated the tax consequences of Plunkett's actions. The Government explained that it did not pursue any sort of tax offense in the case, and it took no steps to obtain her tax records. The hearing continued, but when the district court later began to explain and pronounce Plunkett's sentence, it reiterated its concern about the possible tax implications. Specifically, the district court stated, "I am as sure as I can be that no income tax was ever paid on this money that was stolen." Noting the evidence that Plunkett altered inventory records for the businesses, the district court explained that "[h]igher inventory means that the business is going to pay less in income taxes." The district court concluded that it was satisfied by a preponderance of the evidence that Plunkett had committed tax fraud because "[a]lmost nobody reports stolen money as income and pays income tax on it," despite stating that it "realize[d] there's probably no definite evidence of income tax fraud here." Plunkett did not object to any of these comments.

After the upward departure from criminal history Category I to VI, Plunkett's Guidelines sentencing range increased from 33 to 41 months' imprisonment to 92 to 115 months' imprisonment. The district court sentenced Plunkett to 94 months' imprisonment and 3 years of supervised release. After imposing the sentence, the district court also found that, while there had been 13 different embezzlements charged in the indictment, "there's hundreds more." Plunkett objected to this comment, which the district court swiftly overruled.

II.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." United

States v. Jones, 89 F.4th 681, 684 (8th Cir. 2023) (citation omitted). We employ a two-step review: "first we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." Id. (citation omitted).

## A.

We first address Plunkett's claims of procedural error. She argues that the district court procedurally erred by (1) departing upward from criminal history Category I to VI without adequate explanation and (2) relying on several allegedly clearly erroneous factual findings.

## 1.

Failing to adequately explain an upward criminal history departure is a significant procedural error. See United States v. Ortiz, 636 F.3d 389, 394 (8th Cir. 2011). USSG § 4A1.3 "permits an upward departure if 'reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." United States v. Azure, 536 F.3d 922, 930 (8th Cir. 2008) (citation omitted). A district court seeking to impose an upward criminal history departure under § 4A1.3 must "compar[e] the defendant's criminal history with the criminal histories of other offenders in each higher category." Id. at 931 (citation omitted). While this does not demand a "ritualistic exercise" of "discuss[ing] each criminal history category it rejects en route to the category that it selects," the district court must "'adequately explain[]' why it concludes the intermediary categories fail to meet the purposes of § 4A1.3." Id. (alteration in original) (citations omitted). This explanation is especially important where "the upward departure takes the defendant from the lowest to the highest criminal history category." Id. at 932. However, any error in a district court's failure to adequately explain the departure is harmless if the district court would have imposed the same sentence as a variance anyway based on the 18 U.S.C. § 3553(a) factors. See Ortiz,

636 F.3d at 394-95 (finding harmless any procedural error in district court's failure to explain each intermediate criminal history category when it departed from Category II to VI because it would have imposed same sentence as a variance).

Here, the district court gave no particularized explanation for why it rejected the intermediary categories when it departed upward from category I to VI. It simply stated that "the criminal history category of the Defendant should be a VI, not a I, not a II, not a III, not a IV, not a V, but a VI." Plunkett, specifically invoking our holding in Azure, objected to the district court's departure because "there need[ed] to be more specificity as to why those [intermediary] criminal history categories d[id] not apply." The district court overruled the objection. Even if we assume that the district court's failure to discuss each criminal history category it rejected was erroneous, it was harmless because the district court noted that it would have imposed a 94-month sentence as an upward variance based on its consideration of the § 3553(a) factors, placing heavy weight on the nature and circumstances of Plunkett's offenses. See Ortiz, 636 F.3d at 394-95; 18 U.S.C. § 3553(a)(1). The district court noted that "this case [was] off the map," that it had "never seen or heard any case like this," and that Plunkett's crimes were "so callous and so outrageous." The district court also noted the need to provide punishment for Plunkett's embezzlements, "every one a separate crime," and found "it difficult here to see any basis for mercy," emphasizing that the victims were family members. See 18 U.S.C. § 3553(a)(2)(A). On this record, "the district court would have imposed the same sentence, and for the same reasons, regardless of any procedural error it may have made in failing to discuss the intermediate criminal history categories." Ortiz, 636 F.3d at 395.

2.

We next address Plunkett's argument that the district court procedurally erred by basing the sentence on several unsupported factual findings. A district court commits significant procedural error when it relies on clearly erroneous factual findings in selecting a sentence. United States v. Feemster, 572 F.3d 455, 461 (8th

Cir. 2009) (en banc); see also United States v. Harrell, 982 F.3d 1137, 1140 (8th Cir. 2020) ("In selecting a sentence, a district court may rely on undisputed factual allegations in the [PSR], reliable evidence introduced by the parties, and, to some extent, its own judicial experience. However, sentencing courts may not engage in speculation or draw inferences unsupported by the record." (citations omitted)). But significant procedural error is harmless "if we are convinced that the error did not affect the district court's sentencing conclusion." United States v. Wise, 17 F.4th 785, 789 (8th Cir. 2021) (finding harmless any procedural error in district court's comment about presence of fentanyl because, despite remark being unsupported by the record, sentence would have been the same without the comment based on district court's discussion of defendant's extensive criminal history and circumstances of offense). Accordingly, "[w]hen a district court relies on speculation or facts not in the record, we consider whether such reliance was a 'principal basis' for the sentence." Harrell, 982 F.3d at 1140 (citation omitted). And when a defendant does not object before the district court, we review for plain error, which, in addition to showing that the finding was plainly erroneous, requires the defendant to show a "reasonable probability that [she] would have received a lighter sentence but for the error[s]." United States v. Stokes, 750 F.3d 767, 771 (8th Cir. 2014) (citation omitted).

Plunkett points to three remarks that were allegedly unsupported by the record but on which, she asserts, the district court based the sentence: (1) the district court's comment in its presentencing notice of its intent to depart upward that Plunkett had been committing these crimes for "at least 10, probably 14, years"; (2) its finding that Plunkett likely committed tax fraud; and (3) its comment that Plunkett had written herself hundreds of checks over the course of her criminal scheme. Plunkett only objected to the third comment, so we review the other two for plain error. See id.

Even assuming that the first two remarks by the district court were plainly erroneous, on this record, we cannot say that Plunkett has met her burden of showing a reasonable probability of a lighter sentence. See Harrell, 982 F.3d at 1140 (finding

no plain error in district court's comments about the uptick in gun violence in a particular neighborhood and "that people would avoid [defendant] if they knew his criminal history" because comments were not principal basis and reliance on other aggravating factors showed no reasonable probability of lighter sentence). The district court extensively explained the callous nature of Plunkett's crimes, and Judge Kornmann noted that Plunkett's scheme was "by far the most outrageous financial fraud case" he had seen in his 28 years of experience. The district court contrasted this case with other embezzlement cases it had presided over involving hospitals or banks but explained that what made this case even more outrageous was that Plunkett was stealing money from her family. Moreover, the district court emphasized that Plunkett "tried to frustrate efforts by the victims to find out what had happened" by, for example, refusing to give them certain accounting passwords, and that Plunkett had no plan to pay back the money. This demonstrates that the comments were not the principal basis for the sentence.

For these same reasons, we find that the comment that Plunkett *did* object to—the district court's finding that Plunkett wrote hundreds of checks to herself—was not the principal basis for the sentence. See United States v. Eagle Pipe, 911 F.3d 1245, 1248 (8th Cir. 2019) (concluding that district court's unsupported findings, such as speculating that defendant likely committed other acts of domestic violence because such crimes often go unreported and "fail[ing] to . . . resolv[e] confusion in the record whether [the defendant] ha[d] 69, 100, or 101 prior tribal convictions," were not principal basis for sentence, and therefore finding no plain error). Thus, the district court did not commit procedural error in imposing Plunkett's sentence.

B.

Plunkett also challenges the substantive reasonableness of her sentence, arguing that the district court gave too much weight to aggravating factors and not enough weight to mitigating factors, notably, her children's heaping medical bills that motivated her crimes and her decision to enter a guilty plea early in the case.

"A district court abuses its discretion when it 'fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors.'" United States v. Holmes, 87 F.4th 910, 916 (8th Cir. 2023) (citation omitted).

But "[a] district court has wide latitude in weighing relevant factors, including discretion to assign more weight to the offense's nature and circumstances than to the defendant's 'mitigating personal characteristics.'" United States v. Anderson, 90 F.4th 1226, 1227 (8th Cir. 2024) (citation omitted). The district court did not abuse its wide latitude when it weighed the circumstances of Plunkett's fraud—that she had repeatedly done this to her family, frustrated their recovery efforts, and made no plans to pay the money back—more heavily than her personal financial troubles. We therefore find that the district court imposed a substantively reasonable sentence.

III.

For these reasons, we affirm Plunkett's sentence.

_____