# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3335

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Brandon L. Bennett, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 17, 2011
Filed: October 19, 2011

———————

Before MURPHY and SMITH, Circuit Judges, and SCHREIER,[1] District Judge.

———————

SMITH, Circuit Judge.

Brandon Bennett pleaded guilty to distributing and conspiring to distribute Benzylpiperazine (BZP) in violation of federal law. At sentencing, Bennett objected to the district court's[2] conclusion that BZP was sufficiently equivalent to Methylenedioxymethamphetamine (MDMA)—the chemical name for the drug

———————

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota, sitting by designation.

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

commonly called "Ecstasy"—to compute Bennett's drug quantity under the Sentencing Guidelines. The district court denied Bennett's objection and sentenced Bennett at the bottom of the advisory Guidelines range to 57 months' imprisonment. Bennett appeals and, for the reasons that follow, we affirm.

## I. *Background*

On August 11, 2008, Jackson County, Missouri Drug Task Force officers purchased 50 tablets of BZP for $400 from Bennett through a confidential informant. On August 21, 2008, an undercover detective purchased five tablets of BZP for $50 from Bennett. On August 29, 2008, a second detective purchased 100 BZP tablets for $775. On September 4, 2008, authorities purchased another 100 tablets for $750.

On October 29, 2008, authorities arrested Bennett after a failed attempt to purchase another 100 BZP tablets. Bennett waived his *Miranda* rights and promptly confessed to selling the tablets and purchasing them from his codefendant, Randy "Roller Coaster" Robinson. Subsequently, Bennett pleaded guilty to two counts of distributing BZP, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of conspiring to distribute BZP, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

Before his sentencing hearing, Bennett filed a sentencing memorandum arguing that the "sentencing guidelines contain no reference to BZP at all" and that, "[b]ecause the Sentencing Commission has not studied BZP, the court has no basis to defer to the advisory guideline range as a reasonable sentence." Bennett attached to his sentencing memorandum a study from the National Drug Intelligence Center indicating that the typical dosage of BZP ranges from 20 to 200 milligrams, and that "BZP is 10 to 20 times less potent than amphetamine." Bennett also cited a district court case from the Middle District of Alabama in which the district judge concluded that BZP was less potent than Ecstasy and varied downward on that basis. *See United States v. Rose*, 722 F. Supp. 2d 1286 (M.D. Ala. 2010).

On May 25, 2010, the district court continued Bennett's sentencing to further review Bennett's objections to BZP and MDMA's relatedness. In response, United States Probation authored a second addendum to the Presentence Investigation Report (PSR) in which it calculated Bennett's base offense level pursuant to U.S.S.G. § 2D1.1, Application Note 5. That provision directs the sentencing court to determine the amount, for sentencing purposes, of a controlled substance based on the marihuana equivalency of the most closely related controlled substance referenced in the Guidelines. The PSR determined that BZP was most closely related to MDMA/Ecstasy. According to the drug equivalency table, one gram of MDMA equals 500 grams of marihuana.[3] Approximately 330 grams of BZP was attributed to Bennett, which is roughly equal to 165 kilograms of marihuana, yielding a base offense level of 26.

On October 5, 2010, the district court reconvened Bennett's sentencing hearing. The court opened the hearing, stating:

THE COURT: And I believe Mr. Moss has filed a sentencing memorandum on August 30th, 2010, as well. And I will advise the—the parties and so the record is clear, *I have reviewed all those documents*. I have reviewed—I've received some more—another letter, at least one other letter in support of Mr. Bennett. And I have reviewed all

---

[3]The Sentencing Guidelines provide, in pertinent part, that "[i]n the case of a controlled substance that is not specifically referenced in [the drug-quantity guideline], determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in [the drug-quantity guideline]." U.S.S.G. § 2D1.1, cmt. 5.

the letters in this file from his parents, sisters, and other people, *and I have reviewed the presentence investigation report again*.

(Emphases added.)

The district court itemized each of the § 3553(a) factors and analyzed Bennett's offense and circumstances in relation to those factors. Before announcing the sentence, the district court said:

THE COURT: So I've—I've thought about this a long time. Mr.—Mr. Moss has made some pretty good arguments during the course of this case that required me to do some research and required the probation people to—to look at this drug that we're dealing with this, this BZP. While it may not be in the sentencing guidelines, it is illegal. It does affect the community. It does hurt children. It does hurt people in our community. So with that said, I—I think I fashioned a sentence that I hope is consistent with our—with the guidelines, and also consistent with the goals of 3553(a).

Concluding BZP was sufficiently related to Ecstasy, the district court calculated Bennett's advisory Guidelines range at 57 to 71 months' imprisonment. Bennett requested a downward variance of 36 months based on the lack of BZP and Ecstasy relatedness, but the district court sentenced Bennett at the bottom of the advisory Guidelines range to 57 months' imprisonment.

## II. *Discussion*

On appeal, Bennett maintains that the district court committed prejudicial procedural error by failing to consider Bennett's objections that BZP is insufficiently

-4-

similar to MDMA, in both potency and properties, to justify the use of the MDMA quantity tables in calculating the Guidelines range applicable to a BZP offense.

"In reviewing for procedural error, we review the district court's application of the [G]uidelines *de novo* and its factual findings for clear error." *United States v. Dixon*, —F.3d—, No. 10-3644, 2011 WL 3557872, at \*3 (8th Cir. Aug. 15, 2011) (citing *United States v. Paz*, 622 F.3d 890, 891 (8th Cir. 2010)). Moreover, when the defendant does not object at sentencing to an alleged procedural defect, we review only for plain error. *United States v. Townsend*, 618 F.3d 915, 918 (8th Cir. 2010). However, because a review of the transcript reveals that Bennett did contemporaneously object to the district court's application of the § 3553(a) factors, plain-error review does not apply here.

In reviewing a criminal defendant's sentence, we "'must first ensure that the district court committed no significant procedural error.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, *failing to consider the § 3553(a) factors*, selecting a sentence based on clearly erroneous facts, or *failing to adequately explain the chosen sentence*—including an explanation for any deviation from the Guidelines range.'" *Id.* (emphases added) (quoting *Gall*, 552 U.S. at 51). Here, Bennett maintains that the district court procedurally erred when it (1) "ignored undisputed scientific studies and legal authority that demonstrated BZP is significantly less serious, less harmful, and less dangerous than both MDMA and amphetamine"; and (2) failed to adequately explain its reasons for rejecting Bennett's evidence and argument concerning BZP's and MDMA's lack of commonality. Both of Bennett's arguments are meritless.

Concerning Bennett's first point that the district court wholly "ignored" his objection that BZP and MDMA lacked sufficient equivalency, the record reflects that the district court appropriately considered whether the two drugs were sufficiently

related. The district court confirmed at sentencing that it had reviewed all the evidence that Bennett submitted. The district court stressed that it had "thought about this a long time" and acknowledged that "Mr. Moss ha[d] made some pretty good arguments during the course of this case." Moreover, and perhaps most tellingly, the district court, in response to Bennett's initial sentencing memorandum, actually *continued* Bennett's sentencing for over five months and ordered a second addendum to the PSR for the specific purpose of addressing Bennett's BZP argument. Thus, the record refutes Bennett's contention that the district court declined to even consider his BZP objection.

Additionally, the district court adequately explained why BZP and MDMA were sufficiently related. Although "'[w]e do not require district courts to mechanically recite the § 3553(a) factors when it is clear the factors were properly considered,'" *Dixon*, 2011 WL 3557872, at *3 (quoting *United States v. Brown*, 627 F.3d 1068, 1073 (8th Cir. 2010)), a review of the sentencing-hearing transcript reveals that the district court recited all of the § 3553(a) factors and gave its rationale for a Guidelines sentence in Bennett's case based on each factor's respective goal. Ideally, a district court should craft its explanation of drug equivalency in the language employed by the Guidelines. Specifically, U.S.S.G. § 2D1.1(c) sets out the Guidelines' "Drug Quantity Table." Application Note 5 to that Guidelines section governs "Analogues and Controlled Substances Not Referenced in this Guideline," and provides that, "[i]n determining the most closely related controlled substance" for the purposes of § 2D1.1, the district court

> shall, to the extent practicable, consider the following:
>
> > (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
> >
> > (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the

-6-

stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

Although the district court did not explain in these precise terms its conclusion that BZP and MDMA were sufficiently equivalent for Guidelines purposes, the record shows that the district court considered these and other characteristics of the drugs. For instance, at the sentencing hearing, the district court commented that Bennett's arguments

> *required [the court] to do some research* and required the probation people to—to *look at this drug that we're dealing with this, this BZP.* While it may not be in the sentencing guidelines, it is illegal. It does affect the community. It does hurt children. It does hurt people in our community. So with that said, I—I think I fashioned a sentence that I hope is consistent with our—with the guidelines, and also consistent with the goals of 3553(a).

(Emphases added.)

The district court stated it researched and examined BZP taking into account the drug's multiple deleterious effects on its users and the community as compared to other drugs listed in the Guidelines. We conclude that the district court's comments meet "the requirement that the chosen sentence be adequately explained so as to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Burns*, 577 F.3d 887, 892 (8th Cir. 2009). Accordingly, the district court committed no significant procedural error in explaining its decision to equate BZP with MDMA for drug-quantity purposes.

-7-

### III. *Conclusion*

Based on the foregoing, we affirm.

_____