# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2060

_____

United States of America,          *
                                 *

         Appellee,         *
                                 *   Appeal from the United States
                                 *   District Court for the
     v.                   *   Northern District of Iowa.
                                 *

Shawn Gant,               *
                                 *

         Appellant.      *

_____

Submitted: October 21, 2011
Filed: December 21, 2011

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER,[1] District Judge.

_____

WEBBER, District Judge.

Shawn Gant pleaded guilty to one count of willfully making a telephone threat to kill, injure, and intimidate another individual and to damage and destroy a building by means of a fire or explosive in violation of 18 U.S.C. § 844(e). The district court[2]

_____

[1] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] The Honorable Linda R. Reade, Chief United States District Judge for the Northern District of Iowa.

sentenced him to 120-months imprisonment to run consecutively to an unrelated and undischarged term of imprisonment imposed in Fayette County, Iowa, followed by a three-year term of supervised release.

Gant now appeals. He asserts that at sentencing, the district court procedurally erred by considering exhibits that describe fires and an assault to substantiate an upward departure based on United States Sentencing Guideline § 4A1.3, "Departures Based on Inadequacy of Criminal History Category." He also asserts that his 120-month sentence is substantively unreasonable. We affirm.

## I. Background

From approximately 9:00 p.m. on June 8, 2010, to approximately 2:00 a.m. on June 9, 2010, Gant sent fourteen cellular telephone text messages to his ex-girlfriend. The text messages made arson-related threats including: "[your new boyfriend] will burn"; "There will b a fire indee 2nite"; "just gotta wait 4 people 2 go 2 sleep"; and, "Thats fine after I burn [your new boyfriend] i will kill my self. Just waitn 4 u 2 leave."[3] On June 16, 2010, Gant sent a text message to his ex-girlfriend, "Do you know I was in your house Saturday night?" Another message from that day stated, "Place very easy to get in."

On June 17, 2010, employees of Pancho's Mexican-American Restaurant reported to police that Gant had been calling the restaurant numerous times for several days looking for his ex-girlfriend. On that day, when the person who answered the phone instructed Gant that his ex-girlfriend was not there, Gant stated "I'm done f---ing around. I'll just blow it up."

---

[3] Typographical errors in original text messages.

On July 13, 2010, a federal grand jury returned a two-count indictment against Gant, charging him in Count 1 with using an instrument of interstate commerce, that is, a telephone, to willfully make a threat to kill, injure, and intimidate another individual and to damage and destroy a building by means of a fire or an explosive in violation of 18 U.S.C. § 844(e). Count 2 charged Gant with using an instrument of interstate commerce, that is, a telephone, to willfully make a threat to damage and destroy a building by means of a fire or an explosive device in violation of 18 U.S.C. § 844(e).

Gant entered into a plea agreement in which the United States agreed to dismiss Count 2 of the indictment in exchange for Gant pleading guilty to Count 1. In the plea agreement, the parties stipulated to a Base Offense Level of 12 and a two-level increase pursuant to U.S.S.G. § 2A6.1(b)(3) because the offense involved the violation of a court protective order. On April 28, 2011, Gant pleaded guilty to Count 1 of the indictment and Count 2 was dismissed.

After Gant pleaded guilty, the supplied presentence investigation report ("PSR") suggested a two-level increase because the offense involved more than two threats, U.S.S.G. § 2A6.1(b)(2)(A).[4] The PSR also suggested a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) and, upon motion of the United States, an additional one-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b).

The PSR also detailed Gant's long criminal history, which included an Iowa state conviction for one count of second-degree arson, one count of first-degree arson, a later guilty plea to one count of reckless use of fire, numerous public intoxication citations, and thefts. In the PSR, Gant's total offense level was 13 and his criminal

---

[4] The PSR relied on the 2010 version of the United States Sentencing Guidelines Manual.

history was Category VI. The PSR concluded that Gant's Guideline range of imprisonment was 33 to 41 months, but it noted that under 18 U.S.C. § 844(e), Gant could receive up to ten-years imprisonment. It also recommended that the sentence imposed should run consecutively to the undischarged term of state imprisonment. Gant objected to portions of the PSR.

At the sentencing hearing, the United States moved for an upward departure to the statutory maximum of 120-months imprisonment based upon dismissed and uncharged conduct pursuant to U.S.S.G. § 5K2.21, and understated criminal history pursuant to U.S.S.G. §4A1.3(a)(1). The United States submitted thirteen exhibits to support its argument for an upward departure and variance:[5]

- Exhibit 1, a Fayette County, Iowa, Sheriff's Office Dispatch Sheet dated March, 2, 1991, states that Mike Gant, Gant's father, reported a car fire at his residence.
- Exhibit 2, Fayette County, Iowa, Sheriff's Office Dispatch Sheet dated March 9, 1991, states that a neighbor reported a orange glow by Mike Gant's car outside his residence.
- Exhibit 3, a Department of Public Safety Field Investigation Report, details a house fire at the Gant residence on September 7, 1991. The report states that the fire destroyed much of the home, its furnishings, and garage. Gant and his brother were in the home at the time the fire began in the attached garage. The fire was ruled accidental.
- Exhibit 4, a volunteer fire department report sheet dated June 13, 1994, lists Shawn Gant reporting a car fire behind the post office.

---

[5] Gant states that the United States submitted fourteen sentencing exhibits. However, the United States withdrew exhibit 12 at sentencing and omitted that exhibit from its Appendix.

- Exhibit 5, an Iowa Department of Public Safety Field Investigation Report dated August 17, 1994, reports an accidental fire at a two-story brick building that has three apartments on the second floor above a business. Gant was at the building when a fire began in a pile of clothing on a bedroom floor.

- Exhibit 6, an Iowa Department of Public Safety Field Investigation Report dated December 14, 1994, describes an accidental fire at a mobile home occupied by Gant. Gant was at the mobile home alone when the fire was discovered.

- Exhibit 7, a case report from the Winneshiek County Sheriff dated November 7, 1995, states that a fire destroyed a barn at Mike Gant's residence.

- Exhibit 8, an Iowa Department of Public Safety Field Investigation Report dated March 15, 1996, describes an accidental fire at a dairy barn. An attached Sheriff's report states that the arson was suspected, and that Gant was observed at the scene watching the fire from his car. Gant's car was searched and no evidence linking Gant to the fire was found.

- Exhibit 9, a Decorah Volunteer Fire Department report dated January 4, 2002, describes a car fire in the Wal-Mart parking lot. Gant's name is listed on the report.

- Exhibit 10, a Decorah Volunteer Fire Department report dated January 15, 2002, lists "Shawn Gant" and reports a car fire.

- Exhibit 11, a Fire Incident report dated June 23, 2002, describes a vehicle fire in Super 8 Motel parking lot. The vehicle was owned by Service Master Janitorial and "the operator of the [vehicle] was Shawn Gant." The back of the vehicle contained a lawn mower, a weed trimmer, and a gas can. The report states Gant was drinking beer while talking with the fire fighters and he

appeared intoxicated. The vehicle was completely destroyed and the cause of the fire was "undetermined."

- Exhibit 13, an Iowa Incident Report from the Independence, Iowa, Police Department dated January 5, 2009, reports a domestic assault between Gant and his girlfriend. The report states that the girlfriend was the aggressor and had been drinking. The officer's investigation notes state that the officer was en route to the scene of a reported car fire outside of the residence when the dispatcher advised the officer that a domestic disturbance also had been reported at that residence. When the officer arrived, the car was engulfed in flames.

- Exhibit 14, an Iowa Department of Public Safety Field Investigation Report dated September 28, 2009, describes a fire at a residence rented by Gant and others. The cause of the fire was determined to be accidental and caused by "an electrical anomaly."

Regarding the exhibits, Gant conceded that exhibits 6, 9, 10, and 11 corroborated admissions contained in the PSR, which included "starting other fires, including lighting two of his cars on fire, lighting a mobile home on fire, and lighting a beanbag chair on fire in an apartment[.]" He challenged, however, the reliability of the other exhibits. The district court received the exhibits "for whatever relevance they have[.]"

In addition to challenging the reliability of the sentencing exhibits, Gant also argued for leniency and stated that his substance abuse and depression should be considered as strong mitigating factors to lessen his term of imprisonment.

The district court issued a written sentencing memorandum detailing its rationale for departing upward or, alternatively, varying upward. The district court

found that an upward departure under U.S.S.G. § 4A1.3 was warranted because the evidence before it demonstrated that Gant's criminal history category did not accurately represent the seriousness of his criminal past and his likely recidivism. The district court also found that an upward departure under U.S.S.G. § 5K2.21 was appropriate because of the seriousness of the conduct underlying the dismissed charge. Alternatively, the district court found that an upward variance was necessary for many reasons including to protect the public from Gant, "a violent person who has an apparent proclivity to set fires."

The district court imposed the statutory maximum of 120-months imprisonment, with the sentence to run consecutively to the undischarged term of imprisonment imposed by Iowa state court. In addition, the district court ordered three years of supervised release and a special assessment of $100. Lastly, Gant was ordered to have no contact with his victims or their families throughout his incarceration and supervised release.

Gant now appeals. He contends that the district court procedurally erred by considering the United States' exhibits 1-5, 7-8, 13 and 14 as reliable proof of his previous arson activity because those exhibits do not show that he was responsible for setting the fires described in the exhibits. He also asserts that his 120-month sentence of imprisonment is substantively unreasonable.

## II. Standard of Review

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "In reviewing for procedural error, we review the district court's application of the [G]uidelines *de novo* and its factual findings for clear error." *United States v. Bennett*, 659 F.3d 711, 714 (8th Cir. 2011) (citations & quotation

omitted). "'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall*, 552 U.S. at 51).

Upon a finding that a sentence is procedurally sound, we next examine the substantive reasonableness of a sentence. *Gall*, 552 U.S. at 51. We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Schlosser*, 558 F.3d 736, 741 (8th Cir. 2009).

### III. Discussion

A. Procedural Error

Gant first challenges his sentence on the ground that the district court procedurally erred by considering exhibits 1-5, 7-8, 13 and 14 for the purposes of an upward departure pursuant to U.S.S.G. § 4A1.3 because those exhibits do not establish or even allege he was responsible for purposefully causing the fires described therein.[6] At sentencing and on appeal, Gant argues that the contested exhibits do not "reliably prove that [he] indeed committed all of the 'prior arsons' alleged by the government," and accordingly, the district court procedurally erred by considering the exhibits as reliable information regarding his arson activity and

---

[6] Gant does not contest exhibits 6, 9, 10, and 11, which he states corroborate prior admitted acts including setting on fire two of his cars, a bean bag chair in an apartment, and a mobile home.

relying on them for a U.S.S.G. § 4A1.3 upward departure.[7]  In essence, Gant argues that the district court erred by selecting a sentence based on clearly erroneous facts.

A sentencing court has a wide discretion and may consider any relevant information that may assist the court in determining a fair and just sentence.  *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009).  "[I]n sentencing, 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. . . .' "  *United States v. Ortiz*, 636 F.3d 389, 393 (8th Cir. 2011) (quoting *United States v. Straw*, 616 f.3d 737, 741 (8th Cir. 2010)).  The information need not be admissible under the Federal Rules of Evidence; rather, the information must have a "sufficient indicia of reliability to support its probable accuracy."  *Pratt*, 553 F.3d at  1170. (citing U.S.S.G. § 6A1.3(a)).  A court may consider relevant information that "[includes] criminal activity for which the defendant has not been prosecuted and uncorroborated hearsay, provided the [defendant is] given a chance to rebut or explain it."  *Id.* (alteration in the original; internal quotation omitted).

United States Sentencing Guideline § 4A1.3(a)(1) states, "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history *or* the likelihood that the defendant will commit other crimes, an upward departure may be warranted." (emphasis added).  Under § 4A1.3(a)(2)(E), "[p]rior similar adult criminal conduct not resulting in a criminal conviction" can be used as a basis for an upward departure pursuant to § 4A1.3.  Section 4A1.3(a)(3) provides that a prior arrest record alone may not be considered in determining whether an upward departure is warranted. "When contemplating and structuring such a departure, the district court should

---

[7]  The district court relied on U.S.S.G. § 4A1.3 and § 5K2.21 to depart upwardly from the guideline range calculated by the PSR.  Gant only contends the upward departure pursuant to U.S.S.G. § 4A1.3 is erroneous.

consider both the nature and the extent of the defendant's criminal history." *United States v. Walking Eagle*, 553 F.3d 654, 657 (8th Cir. 2009). Moreover, in considering a defendant's likelihood to recidivate, "a court may take into account any evidence of obvious incorrigibility and conclude that . . . leniency has not been effective." *Id*. (citations and quotation omitted).

Even though a district court has the discretion to consider a wide variety of evidence at sentencing, *Ortiz*, 636 F.3d at 393; *Pratt*, 553 F.3d at 1170, the exhibits still must be sufficiently reliable. U.S.S.G. § 4A1.3(a)(1). The contested exhibits are problematic for the purposes of substantiating a § 4A1.3 upward departure because they merely describe fires that are tangentially related to Gant, if related at all. None of the contested exhibits show "criminal conduct." In fact, only one of the contested exhibits mentions the suspicion of arson and one exhibit links Gant to an assault for which he was not the aggressor. All but one of the contested exhibits deem the reported fires accidental. The contested exhibits are not reliable proof of Gant's criminal history.

The district court, however, received the exhibits "for whatever relevance they have[.]" Sentencing Hr'g Tr. at 5. We presume that district judges know the law and apply it when making their decisions. *United States v. Otto*, 176 F.3d 416, 418 (8th Cir. 1999). Therefore, we presume that the district court only considered the exhibits that corroborated the criminal conduct described in the PSR and did not consider the exhibits that were irrelevant to Gant's uncharged criminal conduct or criminal history. The district court did not make a finding that Gant committed the conduct described in the thirteen exhibits. That finding would be clearly erroneous because the contested exhibits do not attribute criminal responsibility to Gant. Instead, the district court reflected on the totality of the evidence before it, the PSR and the sentencing exhibits, and concluded that the advisory Guideline range did not reflect Gant's unscored criminal history, his likelihood to recidivate, or his escalating violent behavior.

To the extent that the district court relied on the contested exhibits, it was harmless error. Without consideration of the contested exhibits, facts contained within the PSR and the uncontested exhibits provide more than enough factual support for the district court's upward departure based on the inadequacy of Gant's calculated criminal history category and his relevant unscored criminal conduct. *Cf. United States v. Left Hand Bull*, 477 F.3d 518, 520-21 (8th Cir. 2006) (finding that the record supports the upward departure pursuant to § 4A1.3, without consideration of the prior arrest records that "shall not be considered" for the purposes of a § 4A1.3 upward departure). For example, the record before the district court demonstrates that Gant did not receive any criminal history points for ten misdemeanors including numerous thefts, disorderly conduct, and public intoxication. Moreover, the uncontested exhibits describe two automobile fires and a mobile home fire set by Gant, as well as Gant's intoxication at the scene of one of the fires.

The district court's concern about Gant's likelihood to recidivate and Gant's escalating violence further substantiates the upward departure pursuant to U.S.S.G. § 4A1.3(a)(1). Section 4A1.3(a)(1) is phrased in the disjunctive and allows for an upward departure if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history *or* the likelihood that the defendant will commit other crimes[.]" (emphasis added). Viewing the totality of the record, the district court noted that Gant's twenty-year history shows a pattern of destructive misconduct that is becoming increasingly violent, and Gant has progressed from starting fires in his car and his home to becoming a serious danger to others by making threats to kill people and blow up restaurants. In light of this concern regarding recidivism and increasingly violent behavior, the district court did not err by departing upward when sentencing Gant.

Even if the district court placed too much weight on the sentencing exhibits and improperly mistook an inference of criminal conduct for actual criminal conduct, any

procedural error was harmless as a matter of law because the district court alternatively reasoned that it would impose the same sentence "after carefully considering all the statutory factors at 18 U.S.C. § 3553(a)." The district court stated "[Gant's] history and characteristics warrant an upward variance. In addition, an upward variance is necessary to protect the public from further crimes of [Gant]." The district court found that "more lenient treatment . . . has had little to no deterrent effect on him." It concluded, "[Gant's] escalating behavior, which now includes threats to kill others, persuades the court that a sentence at the statutory maximum is the sentence which is sufficient but not greater than necessary to achieve the goals of sentencing." In light of these statements, we have no doubt that the district court would have sentenced Gant to the statutory maximum regardless of any possible procedural error caused by utilizing the contested exhibits. *See Ortiz*, 636 F.3d 389 at 395 (finding any procedural error harmless because the district court's order indicated that it would have imposed the same sentence regardless of any calculated departures under the Sentencing Guidelines).

B. Substantive Reasonableness

Gant also asserts that his sentence is substantively unreasonable. He argues that his sentence over punishes the instant offense and does not address Gant's alcoholism and depression.

As mentioned above, the substantive reasonableness of a sentence is reviewed for an abuse of discretion. *United States v. Schlosser*, 558 F.3d 736, 741 (8th Cir. 2009). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or ... considers only the appropriate factors but in weighing those factors commits a clear error of judgment.." *U.S. v. Saddler*, 538 F.3d 879, 890 (8th Cir. 2008) (citation & quotation omitted). We do not presume unreasonableness simply because a sentence is outside of the advisory guidelines range. *Schlosser*, 558 F.3d at 741. On

-12-

abuse-of-discretion review, we give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance. *Gall*, 552 U.S. at 51.

A review of the record shows that the district court considered Gant's nature and history, the seriousness of the offense, his criminal history, the danger and threat he posed to the public, and the need for punishment and deterrence. Gant argues that the district court did not give enough weight to his depression and alcoholism. We disagree. The record clearly shows that the district court considered those mitigating factors before imposing punishment. A district court does not impose a substantively unreasonable sentence merely because the district court attributes less weight to a defendant's personal problems. *United States v. Wisecarver*, 644 F.3d 764, 774-75 (8th Cir. 2011). It was within the district court's discretion to give less weight to Gant's depression and alcoholism than to other factors the district court considered including the danger Gant presents to society.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court and Gant's sentence.

_____