# IN THE COURT OF APPEALS OF IOWA

No. 22-1506
Filed April 12, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**TYRONE DEANTHONY JONES,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Ackley, Judge.

A defendant appeals his indeterminate fifteen-year sentence for three drug-related convictions. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

Tyrone Jones appeals his indeterminate fifteen-year prison sentence for possession of methamphetamine, cocaine, and clonazepam. He identifies three flaws. First, he argues the district court considered unproven conduct and impermissible factors. Second, he contends the court failed to give reasons for consecutive sentences. And third, he notes that the written judgment imposing a $1000 fine conflicts with the oral pronouncement. The State concedes the second and third points. But it defends the court's two references to Jones's "assaultive conduct" and its remark that he had "multiple children in multiple communities." Because Jones had only one assault conviction, and his children born out of wedlock were not a valid aggravating factor, resentencing before a different judge is required.

## I.      Facts and Prior Proceedings

This sentencing appeal encompasses two criminal cases. In May 2022, the State charged Jones with three counts: (1) possession with intent to deliver methamphetamine, a class "B" felony, in violation of Iowa Code section 124.401(1)(b)(7) (2022); (2) possession of marijuana; and (3) possession of cocaine, both serious misdemeanors, in violation of section 124.401(5). Two months later, the State charged him with (1) possession of clonazepam, enhanced as a third or subsequent offense and (2) possession of "MDMA," as a third or subsequent offense, both class "D" felonies, in violation of section 124.401(5).[1]

---

[1] MDMA is short for Methylenedioxymethamphetamine—commonly known as ecstasy. *United States v. Bennett*, 659 F.3d 711, 713 (8th Cir. 2011).

Jones reached a plea bargain with the State to address both cases. In the first case, he agreed to plead guilty to the lesser offense of possession of methamphetamine, a class "C" felony, in violation of section 124.401(1)(c)(6), and to possession of cocaine, a serious misdemeanor. In the second case, he agreed to plead guilty to possession of clonazepam, as a third or subsequent offense. In exchange, the State agreed to dismiss the remaining counts and to recommend suspended concurrent sentences of ten years and one year for the first two counts and a suspended five-year sentence for the third offense. These terms were to run consecutively for a fifteen-year suspended sentence. The agreement was not binding on the sentencing court.

At the sentencing hearing, the State followed through with its recommendation for suspended terms. It recommended "formal probation" to "direct Mr. Jones into the correct path . . . , including any mental-health and substance-abuse treatment." The presentence investigation (PSI) report also recommended supervised probation. But the district court rejected the plea agreement and sentenced Jones to a prison term not to exceed fifteen years. The court also announced that it would suspend the $1000 fine. But the written sentencing order imposed the fine. Jones now appeals the sentence.

## II. Jurisdiction and Standard of Review

Jones has good cause to appeal his sentence. *See* Iowa Code § 814.6(1)(a)(3); *State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020). We review sentencing decisions for correction of legal error. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We presume a sentence within the statutory limits is valid, and will reverse only if we find the district court abused its discretion or considered

inappropriate matters. *Id*. Jones must overcome that presumption by showing the court relied on unproven offenses or improper evidence. *See Damme*, 944 N.W.2d at 106.

### III.     Analysis

Jones asks for resentencing on three grounds: (1) the written judgment conflicts with the court's oral pronouncement suspending his fine; (2) the court failed to give reasons for imposing consecutive sentences; and (3) the court considered unproven conduct and improper sentencing factors. The State contests only the third ground, which is where we start, and end, our analysis.

To set the stage, we start with Jones's allocution. He first acknowledged the need to "get [his] life back together" because he had "done some stuff that not only [he] said [he] would never do, but knew [he] should have never done."

He then discussed his relationship with his children:

> I've been fighting for the last two years to see my last two kids, and not that it's an excuse or anything, but if you were raised the way I was raised, I mean, I want to be able to take care of my responsibilities as far as my babies, so I started, I started looking for a way out. I started trying not to, trying to mask the pain, and the more I covered it up, the deeper it got. I lost my kids, . . . and I had to turn back to what I knew was my strength, so I can't be mad at the fact that I had to sit in jail. It helped me get my strength back. . . . I have fifteen years over my head, and my biggest fear is dying in prison, and I never wanted to go to prison, never wanted to be that type of person that was in and out of prison.

He concluded by expressing remorse for his actions and noting the price of his criminal activities:

> So I just want to apologize to you, the lawyers, and all my friends and all my family for putting them through this. Financially, it took a toll, and I'm here in Iowa, and pay child support and losing my kids, and not having my earnings, and I lost my house, and my things, and all

of the young people that care about me the most, and that's what hurts, so—I don't plan on doing that ever again.

The sentencing court responded by saying: "I read your adult criminal history, and it was atrocious. It's been going on since 2006."[2] The court then chronicled his criminal record:

> A lot of driving, a lot of drugs, a lot of habitual offender things because you just couldn't stop, Mr. Jones. And then you started to get into causing injury to other individuals by assaultive conduct, and then you had some forgeries, you had probation violation after probation violation, and then we have some more assaultive conduct, and then you just kind of are snubbing your nose to the system, license, harassment, and I recognize that when people face me, it's a come-to-Jesus issue, and you know that this is the last stop before the road takes you a bad direction, but I don't find that you are being completely honest with yourself about needing to take care of your family. You have multiple children in multiple communities, and your claiming of attempting to share your joy on your birthday with your friends with methamphetamines is a terrible, terrible thing to do to your family. And I don't buy it. I don't think that's what you were doing.

Jones complains of three troublesome references in this passage. First, he objects to the court's use of the phrase "habitual offender things" outside the context of his driving offenses. He notes:

> The "habitual offender things" were all driving while barred as a habitual offender, which are driving offenses. These should not be

---

[2] Sentencing courts must provide the defendant with a chance "to make a statement in mitigation of punishment" under Iowa Rule of Criminal Procedure 2.23(3)(d). The court must then "state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). Granted, some of those reasons may relate to the allocution, such as a defendant's lack of remorse. *See State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022) (finding allocution made clear that the defendant was not taking responsibility for her actions). But sentencing courts should recognize the therapeutic value of allocution, which would be undermined by a court's point-by-point rebuttal. *See ABA Standards for Criminal Justice*, Standard 18-5.178 Sentencing Hearing ("The policy behind the right of allocution has more to do with maximizing the perceived equity of the process than with conveying information on which courts may rely in making findings of fact.").

confused with the habitual offender enhancement. *See* Iowa Code § 902.8 (2022) ("An habitual offender is any person convicted of a class 'C' or a class 'D' felony, who has twice before been convicted of any felony in a court of this or any other state, or of the United States.").

It's true that a sentencing court may not rely on unproven or unprosecuted charges unless the defendant admits committing them. *Formaro*, 638 N.W.2d at 725. But the court's reference to Jones being a habitual offender comes right out of the PSI report. His criminal record shows five convictions for driving while barred as a habitual offender. *See* Iowa Code § 321.555. Nothing about the court's comment suggests that it confused section 321.555 with section 902.8.

Second, Jones contends the court "considered unproven conduct in the form [of] a history of assaults when [he] has only been convicted of one assault." Jones was convicted for committing assault causing bodily injury in 2009. After mentioning Jones's forgery offenses from 2012 and 2013, the court referenced "some more assaultive conduct" on his part. The State agrees Jones had only one assault conviction, but accuses the defense of a "hypertechnical" reading of the court's reference to "assaultive conduct." The State ventures that the court must have been talking about Jones's two convictions for disorderly conduct in 2014 and 2016 and his interference with official acts conviction in 2019. The State describes these crimes as "aggressive or assaultive" by their nature.

In reply, Jones notes that assault is not a necessary element of either disorderly conduct or interference with official acts. *See* Iowa Code §§ 723.4, 719.1(1). Indeed, the website Iowa Courts Online shows that Jones's 2014 and 2016 disorderly conduct convictions were for "loud or raucous noise" under section

723.4(2).[3]  As for interference with official acts, the use of force is not an essential element.  *State v. Brecunier*, 564 N.W.2d 365, 369–70 (Iowa 1997).  Thus, the district court improperly considered unproven acts in attributing "more assaultive conduct" to Jones.  *See State v. Lovell*, 857 N.W.2d 241, 242 (Iowa 2014) (remanding for resentencing when court recited unproven allegation that Lovell paid victim in exchange for sex).

Third, Jones argues it was improper for the court to consider that he has "multiple children in multiple communities" as an aggravating factor in rejecting the plea agreement for suspended sentences.[4]  He cites two out-of-state cases for the proposition that fathering children out of wedlock is not a proper basis for imposing a prison sentence.  *See People v. Bolton,* 589 P.2d 396, 400–01 (Cal. 1979) (finding trial court abused its discretion at sentencing by "expound[ing] at length" about the defendant's children being on public support and some being illegitimate and suggesting such facts should be a felony); *Bradley v. State,* 509 So.2d 1137, 1138 (Fla. Dist. Ct. App. 1987) ("The fact that he has fathered two illegitimate children is patently an improper reason for enhancing his sentence.").

---

[3] We may take judicial notice on appeal of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013) (quoting Iowa Rule of Evidence 5.201(a)–(b)); *see also State v. Hopper*, No. 15-1855, 2017 WL 936085, at *3 (Iowa Ct. App. Mar. 8, 2017) ("The financial information contained on Iowa Courts Online provides adjudicative facts, the accuracy of which cannot reasonably be questioned.").  But it is generally improper to take judicial notice of records from a different proceeding without agreement of the parties. *Washington*, 832 N.W.2d at 656.  Here, the parties agreed to the court's reliance on the PSI report at sentencing.  The PSI report listed convictions from other proceedings, so the specific code sections underlying those convictions are a proper subject of judicial notice.

[4] The PSI report noted that Jones was never married but had "seven children with four different women."

Jones recognizes that we rejected a similar claim in *State v. Chest*, No. 11-0262, 2011 WL 4952951, at *1−2 (Iowa Ct. App. Oct. 19, 2011). In that case, Chest—who committed a robbery with his son—told the court that it was his son's idea and he didn't know what was wrong with his son. *Id.* In sentencing Chest, the district court said: "I guess the reason for what your children do, the only thing I can point to what you did. Twenty children. Twenty children, put into this world, that have you as a role model." *Id.* at *2. We decided that statement was permissible because the court was redirecting responsibility to Chest who "should have been the role model" for his children. *Id.* at *3. We found "no fault in the analysis" of *Bolton* and *Bradley*. *Id.* at *2. But we decided the reference to Chest's children differed from the objectionable reasoning in those cases: "There was no comment made that Chest's children were illegitimate, born out-of-wedlock, or on welfare." *Id.* at *3.

Jones contrasts his allocution with the defendant blaming his son in *Chest*. Jones points to his expressed remorse for failing his children and his new desire "to be a better man and father." The sentencing court countered that expression of contrition with skepticism, questioning Jones's sincerity in wanting to "take care" of his family because he had "multiple children in multiple communities." The State insists the court's observation was a proper consideration of Jones's family circumstances, "especially given Jones's self-serving claim he wanted to be with his children."

We disagree with the State. First off, it would be odd if an allocution wasn't a "self-serving" claim. An allocution's purpose is for the defendant to speak "in mitigation of punishment" under rule 2.23(3)(d). *See generally In re Hasselstrom's*

*Est.*, 135 N.W.2d 530, 535 (Iowa 1965) (describing testimony as "only self serving in the sense it is helpful to the witness's cause").

What's more, taking the response in context, the court was not, as the State suggests, "simply stating that Jones was choosing to use drugs with his friends instead of caring for his family." Rather, the court's emphasis on Jones's "multiple" children living in various locations was a thinly veiled condemnation of the fact he had seven children out of wedlock with four mothers. As the California Supreme Court explained in *Bolton*, "the fathering of children out of wedlock" had no relevance to whether Bolton could best be "rehabilitated by allowing him to continue normal community contacts" or to whether "confinement was necessary to protect the public from [Bolton] or whether a sentence of probation would unduly depreciate the seriousness of the offense." 589 P.2d at 401. As in *Bolton*, Jones's pattern of procreation was not relevant to his opportunity for rehabilitation or the protection of the community from his drug-related offenses. *See* Iowa Code § 901(5); *see also id.* § 907.5(1).

Even if Jones's "multiple children" were a "secondary consideration" for the district court, resentencing is required. *See State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981) (declining to "speculate about the weight trial court mentally assigned" to impermissible factor). Thus, we remand for resentencing before a different

district court judge.  *See Lovell*, 857 N.W.2d at 243.  We do not suggest what the new sentence should be.[5]

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

---

[5] Because the court's consideration of unproven "assaultive conduct" and Jones's "multiple children in multiple communities" mandates resentencing, we need not address the other two sentencing deficiencies raised by Jones.