# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-2240

_____

United States of America

*Plaintiff - Appellee*

v.

Roger Paul Bradford, also known as Paul Bradford

*Defendant - Appellant*

_____

No. 23-2517

_____

United States of America

*Plaintiff - Appellee*

v.

Roger Paul Bradford, also known as Paul Bradford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: May 9, 2024
Filed: August 20, 2024

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KELLY, Circuit Judge.

Roger Paul Bradford pleaded guilty to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. He appeals his conviction and his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In July 2018, a tornado struck Vermeer Corporation's manufacturing facilities in Pella, Iowa, causing widespread property damage. In January 2019, Vermeer hired Bradford as the Director of Construction to facilitate and oversee reconstruction of its damaged buildings. After Bradford was hired, he devised a scheme with a friend, Viorel Draghia, whereby he would receive monetary kickbacks from Draghia in exchange for steering a subset of Vermeer's construction contracts to Draghia's company, Draghia Painting & Contracting Company.

Two construction contracts serve as the basis for the Indictment's wire fraud charge against Bradford: one for masonry work on the "Vermeer EcoCenter" and another for an add-on "Fuel Tank Farm" building. Bradford helped Draghia craft a successful EcoCenter proposal to send to Vermeer's general contractor—who reported directly to Bradford—by sharing Vermeer's confidential project information with Draghia. Per Bradford's instruction, Draghia inflated the proposal so that Draghia would have enough "padding" to pay Bradford at least $150,000 of the final amount and still make money on the project. At Bradford's urging and ultimate direction to use "[his] guy," Vermeer accepted Draghia's $800,000 bid to do the masonry work. This was despite two cheaper bids from other masonry

companies and the general contractor's concern that the price looked "a little high."[1] To justify accepting Draghia's bid and to "allay the concerns of the general contractor," Bradford made several material misrepresentations, including "asserting the other bids were unrealistic" and "that Draghia would get it done timely because he had the necessary manpower."

After his bid was accepted, Draghia "re-subcontracted" with an Iowa masonry company to complete the project for $572,409, because he "did not have laborers who would do the work." This was "substantially less money" than Vermeer paid Draghia. Bradford and Draghia conducted a similar scheme for the Fuel Tank Farm contract. During the summer and fall of 2019, Draghia paid Bradford the agreed-upon kickbacks for the EcoCenter and Fuel Tank Farm projects. Their kickback arrangement was not disclosed to Vermeer or to the general contractor.

When the FBI began investigating in 2020, it met with Draghia, who admitted he paid Bradford kickbacks by cash and check in exchange for the award of construction contracts. That same day, investigators also spoke with Bradford. An FBI agent confronted him with "several checks payable from Draghia Contracting to [Bradford]," but Bradford denied the payments were kickbacks. After the agents left, Bradford contacted Draghia and "requested that they urgently meet." Draghia, in turn, notified the FBI, and he agreed to covertly record his conversation with Bradford. During that recorded conversation, Bradford made several incriminating statements and told Draghia not to talk to or cooperate with investigators.

---

[1]Draghia's original proposed bid totaled $829,590. The general contractor then informed Bradford that it already received two cheaper bids, one for $573,527 and another for $641,437. Bradford told the general contractor he was "confident that [Draghia] is the [subcontractor] we want to do that [masonry] work." Bradford then asked Draghia to lower his bid to around $800,000, and it was accepted by Bradford on behalf of Vermeer for $790,000. After acceptance, the contract amount "was immediately revised upward to $800,555."

A grand jury indicted Bradford on one count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.[2] The Indictment alleged that he used "interstate wire communications" to conspire with Draghia to "execute a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses and representations and by concealing material facts." The purpose of the conspiracy was to "generate unlawful monies for each other by" obtaining construction contracts with Vermeer "so that Viorel Draghia would make money from those contracts and would then, in turn, provide kickbacks to [Bradford]." And, "[o]n multiple dates" in 2019, these kickbacks were paid to Bradford by cash and check. "Had [Bradford] and Viorel Draghia informed the general contractor of their kickback agreement, the general contractor would have informed Vermeer officials . . . . [who] would have ensured that no contracts were awarded to Draghia Contracting."

Bradford pleaded guilty pursuant to a written plea agreement. In that agreement, he expressly waived all trial, appeal, and post-conviction rights challenging his conviction. He preserved, however, "the right to appeal any sentence imposed by the Court."

At sentencing, the district court[3] applied a 10-level enhancement to Bradford's base offense level under United States Sentencing Guidelines (USSG) § 2B1.1(b)(1)(F) (2021), after determining "that the appropriate level of loss attributable to this crime is more than $150,000." It calculated a total offense level 18, criminal history category I, and advisory sentencing range of 27 to 33 months,

---

[2]Bradford was also indicted on one count of Attempted Obstruction of Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). In exchange for his guilty plea on the wire fraud count, the parties agreed that the government would move to dismiss the obstruction count at sentencing, and the government did so.

[3]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

and sentenced Bradford to 20 months in prison followed by 3 years of supervised release. The court also ordered Bradford to pay $23,000 in restitution to Vermeer.

## II.

At the outset, Bradford argues the district court lacked subject matter jurisdiction over his wire fraud offense due to an alleged defect in the Indictment, relying on Ciminelli v. United States, 598 U.S. 306, 309 (2023). Framing it as jurisdictional, he contends this argument falls outside the scope of the appeal waiver.

We review the scope of a waiver in a plea agreement de novo. United States v. Sisco, 576 F.3d 791, 795–96 (8th Cir. 2009). We will enforce an appeal waiver if the issue on appeal falls within the scope of the waiver, the defendant knowingly and voluntarily entered the plea agreement, and enforcing it would not result in "a miscarriage of justice." United States v. Andis, 333 F.3d 886, 889–90 (8th Cir. 2003) (en banc). Even absent a written waiver, a defendant who pleads guilty "waives all defects [in the prosecution] except those that are 'jurisdictional.'" United States v. Todd, 521 F.3d 891, 895 (8th Cir. 2008) (citation omitted); but see Class v. United States, 583 U.S. 174, 178, 183–84 (2018) (holding that a guilty plea by itself does not waive a challenge to the constitutionality of the statute of conviction).

In his Plea Agreement, Bradford waived "any and all rights to appeal [his] conviction, including a waiver of all motions, defenses, and objections which [he] could assert to the charge, or to the Court's entry of judgment against [him]." He does not dispute that his Plea Agreement and appeal waiver were entered into knowingly and voluntarily. See United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010) (concluding an appellant entered into a plea agreement knowingly and voluntarily when he did not argue otherwise). But he asserts that the waiver does not apply because his Indictment fails to "allege a conspiracy to commit wire fraud." According to Bradford, the Indictment alleged "nothing more than the concealment of the kickback . . . [and] of information that went to Vermeer's decision to contract

with Draghia." He contends that the facts of his case, "[s]ave for the plea," are "essentially identical" to those in <u>Ciminelli</u>.

In <u>Ciminelli</u>, the Supreme Court held that the government's sole reliance on the "right to control" "valuable economic information needed to make discretionary economic decisions" cannot form the basis of a jury conviction under the federal wire fraud statute, because mere economic information is not grounded in a "traditional property interest." 598 U.S. at 312, 316. Bradford argues the government's sole theory in his Indictment was the "right to control" valuable economic information. The government counters, asserting that the object of Bradford's scheme was not solely to deprive Vermeer of the right to control economic information, but also to deprive it of money and contracts—traditional property interests.

We need not resolve this disagreement because Bradford's argument does not circumvent his appeal waiver. The district court still had original jurisdiction over the Indictment because it sufficiently alleged a violation of the federal wire fraud statute. <u>See</u> 18 U.S.C. § 3231; <u>United States v. Cotton</u>, 535 U.S. 625, 627 (2002) ("[A] district court 'has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case.'" (alterations in original) (citation omitted)); <u>see also</u> <u>United States v. Foster</u>, 443 F.3d 978, 981 (8th Cir. 2006) (denying the defendant's challenge to subject matter jurisdiction because the court had statutory jurisdiction regardless of the government's ability to prove each element of the charged offense). The purported defect in the Indictment that Bradford urges is non-jurisdictional and the challenge to his conviction is covered by the valid and enforceable appeal waiver.

In the alternative, Bradford argues that if the appeal waiver applies, to enforce it would constitute a "miscarriage of justice." <u>See</u> <u>Andis</u>, 333 F.3d at 891–92. He now claims that, in light of <u>Ciminelli</u>, he is "actually innocent." "But a 'voluntary plea of guilty intelligently made in the light of the then applicable law does not

become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.'" United States v. Cooney, 875 F.3d 414, 416 (8th Cir. 2017) (citation omitted). Moreover, before pleading guilty, Bradford had the opportunity to file a pretrial motion alleging a defect in the Indictment based on its alleged failure to state an offense, see Fed. R. Crim. P. 12(b)(3)(B)(v), and to seek to enter a conditional plea to preserve this challenge for appellate review if the district court ruled against him, see Fed. R. Crim. P. 11(a)(2). The Supreme Court granted certiorari in Ciminelli on June 30, 2022, almost two weeks before pretrial motions were due, and Bradford did not enter his Plea Agreement until September 23, 2022. He also filed two motions to continue sentencing, both of which were granted, but in neither motion did he alert the district court that Ciminelli might impact his case. In these circumstances, enforcing his waiver does not constitute a miscarriage of justice. See Andis, 333 F.3d at 891 ("Although we have not provided an exhaustive list of the circumstances that might constitute a miscarriage of justice, we recognize that these waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts.").

III.

Bradford next argues his sentence should be vacated on two grounds. First, he contends the district court erred in its application of the 10-level enhancement under USSG § 2B1.1(b)(1)(F), which enhances a defendant's base offense level based on the amount of monetary loss in a fraud offense. See § 2B1.1(b)(1)(F), comment. (n.3(A)); United States v. Staples, 410 F.3d 484, 490 (8th Cir. 2005) ("To calculate the sentencing range for a fraud case, we need to determine the amount of loss caused by the fraud."). We review "de novo the district court's interpretation of the Guidelines and review[] for clear error[] its application of the Guidelines to the facts." United States v. Garcia, 772 F.3d 1124, 1125 (8th Cir. 2014) (per curiam) (citation omitted).

Bradford claims there was no loss at all because Vermeer, who was reportedly satisfied with the completed project, did not identify the amount of loss it suffered.

As an initial matter, Bradford stipulated in his Plea Agreement that, for purposes of calculating his sentencing range, there was "loss" under § 2B1.1(b)(1), and the parties stipulated that it "exceeded $15,000." He also agreed that "the extent to which the 'loss' exceeded $15,000" would "be determined by the district court." Even at sentencing, Bradford advocated for a specific loss amount of $23,000. Thus, his argument on appeal that there was no loss is unavailing, if not waived.

To calculate loss, the district court credited the government's expert report "that [Draghia's winning] bid was inflated beyond what the expert even says would have been a reasonable cost to complete back at the time," as well as testimony from the general contractor that "there was zero added value from Mr. Draghia" on the masonry project. It also made a factual finding that there were two other "reasonable bids" from local companies that would have been acceptable and would have resulted in completion of the EcoCenter project for significantly less money. Based on these findings, the district court took the higher of these two other bids and subtracted that amount from Draghia's awarded contract, for a total of $159,000. Though it opined that "more than $150,000" was most likely a "conservative" figure given the circumstances, the court made "its best determination by a preponderance of the evidence of what the loss amount was under (b)(1) of section 2B1.1."

The district court at sentencing "need only make a reasonable estimate of the loss." United States v. Hodge, 588 F.3d 970, 975 (8th Cir. 2009) (quoting § 2B1.1, comment. (n.3(C))). And we defer to the district court's loss calculation "because [it] 'is in a unique position to assess the evidence and estimate the loss based upon that evidence.'" Id. (quoting § 2B1.1, comment. (n.3(C))). Here, the district court made express factual findings supported by the record, resulting in a loss amount caused by Bradford's fraudulent conduct. That was not clearly erroneous.[4]

---

[4]Bradford also argues the district court should not have considered "intended loss" at sentencing. Because we conclude that the district court did not err in calculating actual loss, we need not address this argument.

Second, Bradford argues the district court erred when it denied him access to Draghia's Presentence Investigation Report (PSR) and immigration A-file, and by considering uncharged conduct in Bradford's PSR involving similar kickback schemes with Draghia at other companies. We review the district court's sentencing decisions for an abuse of discretion. United States v. Gant, 663 F.3d 1023, 1029 (8th Cir. 2011); see United States v. Jewell, 614 F.3d 911, 921 (8th Cir. 2010) (reviewing district court's decision to deny access to another person's PSR for an abuse of discretion).

"'[S]ome showing of special need' is required before a district court should release a PSR to a third party." United States v. Spotted Elk, 548 F.3d 641, 672 (8th Cir. 2008) (quoting U.S. Dep't of Just. v. Julian, 486 U.S. 1, 12 (1988)); see United States v. Bagley, 473 U.S. 667, 682 (1985) ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). Draghia's A-file was unavailable to the government, and it did not use the file in its criminal investigation. The district court also conducted an in-camera review of Draghia's PSR and it did not find any exculpatory evidence or special need to release it. Bradford does not demonstrate a reasonable probability that Draghia's A-file or PSR would have changed the outcome of his sentence. Cf. Kyles v. Whitley, 514 U.S. 419, 441 (1995) ("In this case, disclosure of the suppressed [Brady] evidence to competent counsel would have made a different result reasonably probable."). Thus, denying access to these documents was not an abuse of discretion.

As to the unrelated, uncharged fraud schemes alleged, Bradford clarified at sentencing that he did not object to the facts in the PSR, but only to the court considering those schemes when calculating loss under the Guidelines. The district court did not use the uncharged fraudulent conduct to calculate loss, and we find no abuse of discretion in its consideration of this information at sentencing under 18 U.S.C. § 3553(a). See Gant, 663 F.3d at 1029 ("A sentencing court has a wide discretion and may consider any relevant information that may assist the court in determining a [sufficient, but not greater than necessary] sentence.").

## IV.

Finally, Bradford argues the district court erred in denying his three post-sentencing motions to dismiss his Indictment, withdraw his guilty plea, and vacate his sentence. The district court denied these motions because Bradford simultaneously filed his Notice of Appeal raising the same challenges in our court, and therefore, his "appeal divest[ed] [the District] Court of jurisdiction to entertain his motions." See United States v. Ledbetter, 882 F.2d 1345, 1347 (8th Cir. 1989) (discussing the jurisdictional implications of a notice of appeal). The district court did not address Bradford's request that it "make an indicative ruling pursuant to [Rule] 37(a) stating whether [it] would grant the . . . motion[s] if the Court of Appeals remands for that purpose." See Fed. R. Crim. P. 37(a).

Bradford alleges error in the district court's "failure to exercise its jurisdiction" to rule on the merits of his motions or, in the alternative, to make indicative rulings. Even if we assume, without deciding, that Bradford is right, a remand for the district court to consider his motions on their merits in the first instance, as he requests, would provide him no relief. All three of Bradford's post-sentencing motions—challenging his Indictment, guilty plea, and conviction—were based on the same Ciminelli grounds that we conclude are subject to the appeal waiver and not a "miscarriage of justice" to enforce. See Andis, 333 F.3d at 891.

## V.

We dismiss the consolidated appeals in this case in part, based on the appeal waiver, and otherwise affirm the judgment of the district court. We deny Bradford's motion to file a supplemental brief.

_____